UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *solely in its capacity as Trustee,*<br><br>             Interpleader Plaintiff,<br><br>    - against -<br><br>TRIAXX ASSET MANAGEMENT LLC (f/k/a ICP Asset Management LLC); TRIAXX PRIME CDO 2006-1, LTD.; TRIAXX PRIME CDO 2006-2, LTD.; TRIAXX PRIME CDO 2007-1, LTD.; SOUTH TRYON, LLC; PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC; PHOENIX REAL ESTATE SOLUTIONS LTD., and CEDE & CO.,<br><br>             Interpleader Defendants. | **INTERPLEADER COMPLAINT**<br><br>Case No._____ |

Interpleader Plaintiff U.S. Bank National Association ("U.S. Bank" or the "Trustee"), as successor to Bank of America, National Association (successor by merger to LaSalle Bank National Association ("LaSalle")), solely in its capacity as Trustee under (i) the Indenture, dated as of September 7, 2006, by and among its predecessor LaSalle, Triaxx Prime CDO 2006-1, Ltd., as Issuer, and Triaxx Prime CDO 2006-1, LLC, as Co-Issuer (the "2006-1 Indenture"), (ii) the Indenture, dated as of December 14, 2006, by and among its predecessor LaSalle, Triaxx Prime CDO 2006-2, Ltd., as Issuer, and Triaxx Prime CDO 2006-2, LLC, as Co-Issuer (the "2006-2 Indenture"), and (iii) the Indenture, dated as of March 29, 2007, by and among its predecessor LaSalle, Triaxx Prime CDO 2007-1, Ltd., as Issuer, and Triaxx Prime CDO 2007-1, LLC, as Co-Issuer (the "2007-1 Indenture," and together with the 2006-1 Indenture and the 2006-2 Indenture, the "Indentures"),[1] alleges and states that:

---

[1] All capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the respective Indentures.

**INTRODUCTION**

1.      This is an interpleader action brought to obtain adjudication of the rights of the Interpleader Defendants with respect to certain invoices (the "Phoenix Invoices") to be paid to Interpleader Defendants Phoenix Real Estate Solutions Ltd. ("Phoenix"). U.S. Bank, in its capacity as Trustee for the collateralized debt obligations governed by the Indentures, faces competing demands by certain Interpleader Defendants with respect to the payment of the Phoenix Invoices and cannot determine, without hazard to itself, how to proceed.

2.      U.S. Bank serves as both the Collateral Administrator and the Trustee for each of the Triaxx Prime CDO 2006-1, Ltd. transaction ("Triaxx 2006-1), the Triaxx Prime CDO 2006-2, Ltd. transaction ("Triaxx 2006-2"), and the Triaxx Prime CDO 2007-1, Ltd. transaction ("Triaxx 2007-1," and together with Triaxx 2006-1 and Triaxx 2006-2, the "Triaxx CDOs"). As Collateral Administrator, U.S. Bank prepares reports (the "Note Valuation Reports") on behalf of each Issuer. The Note Valuation Reports indicate the distributions to be made on each scheduled payment date (each, a "Payment Date") using the collateral proceeds received by the Trustee on behalf of the Issuers, including distributions with respect to certain "Administrative Expenses" to be paid or reimbursed to various parties, as well as distributions to be made to the Noteholders of the Triaxx CDOs. Thereafter, the Trustee distributes the available proceeds on the Payment Date in accordance with the Note Valuation Reports. All such payments are made pursuant to a Priority of Payments waterfall identified in each Indenture, which permits a certain amount of Administrative Expenses (up to a specified cap) to be paid or reimbursed prior to any distributions being made to Noteholders.

3.      Triaxx Asset Management LLC ("Triaxx Asset Management" or the "Collateral Manager") periodically directs U.S. Bank to include the Phoenix Invoices in the Note Valuation

Reports and pay such invoices out of the available proceeds on the Payment Date. Specifically, the Collateral Manager has classified the Phoenix Invoices as "Other Administrative Expenses" to be paid pursuant to Section 11.1(a)(i)(2), subclause (6), and thus paid before any interest payments or other payments are made to Noteholders. However, Noteholder Pacific Investment Management Company, LLC ("PIMCO"), whose holdings, upon information and belief, constitute a majority of the Controlling Class of Triaxx 2006-2 and Triaxx 2007-1, has recently informed the Trustee of its position that the Phoenix Invoices are not properly classified as Other Administrative Expenses and may not be paid or reimbursed out of any proceeds available on any Payment Date. PIMCO asserts that the Collateral Manager employs Phoenix as a third-party to render advice to it. PIMCO further asserts that pursuant to Section 2(g) of the Collateral Management Agreement, the Collateral Manager may employ third-parties such as Phoenix "at the Collateral Manager's expense," and that, therefore, the Phoenix invoices do not qualify for reimbursement as Other Administrative Expenses. Similarly, Noteholder South Tryon, LLC ("South Tyron"), whose holdings, upon information and belief, constitute a majority of the Controlling Class of Triaxx 2006-1, has recently informed the Trustee of its position that the Phoenix Invoices seeking payment of certain "incentive fees" should not be paid.

4.      The Trustee now finds itself in a situation where it cannot act without risk of legal liability to itself. On one hand, the Collateral Manager demands that U.S. Bank include the Phoenix Invoices in the Note Valuation Reports and pay such invoices as Other Administrative Expenses from the proceeds available on each Payment Date. On the other hand, PIMCO and South Tryon, in their capacities as Noteholders for the Triaxx CDOs, demand that the Trustee not pay the Phoenix Invoices. The Trustee, accordingly brings this Interpleader Action to resolve the dispute.[2]

---

[2] As described more fully below, in connection with the filing of this Interpleader, the Trustee has retained a total of

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties hereto and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      This Court also has subject matter jurisdiction over this action under 12 U.S.C. § 632 (the "Edge Act"). This action satisfies the requirements of Section 632 because it was brought by U.S. Bank, a national banking association organized under the laws of the United States, and it arises out of banking activity with a distinct foreign aspect. Specifically, U.S. Bank provides corporate trust and other related services to, or on behalf of, the Issuers, which are organized under the laws of the Cayman Islands. Thus, this action arises out of the Trustee's execution of such services on behalf of foreign issuers, which is an international banking activity.

7.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1397 because one or more defendants reside within this judicial district.

**PARTIES**

8.      Interpleader Plaintiff U.S. Bank is a national banking association with its main office in Cincinnati, Ohio. U.S. Bank serves as the Trustee under the Indentures and as Collateral Administrator under the Indentures and (i) the Collateral Administration Agreement, dated September 7, 2006, by and between U.S. Bank as successor to Bank of America, National Association (successor by merger to LaSalle), Triaxx Prime CDO 2006-1, Ltd. and ICP Asset Management LLC (the "2006-1 CAA"), (ii) the Collateral Administration Agreement, dated December 14, 2006, by and between by and between U.S. Bank as successor to Bank of America,

---

$416,108.64 across the three Triaxx CDOs, which became available for the payment of the Phoenix Invoices on the May 2, 2018 Payment Date for Triaxx 2006-2 and Triaxx 2007-1 and the May 3, 2018 Payment Date for Triaxx 2006-1.

National Association (successor by merger to LaSalle), Triaxx Prime CDO 2006-2, Ltd. and ICP Asset Management LLC (the "2006-2 CAA"), and (iii) the Collateral Administration Agreement, dated March 29, 2007, by and between by and between U.S. Bank as successor to Bank of America, National Association (successor by merger to LaSalle), Triaxx Prime CDO 2007-1, Ltd. and ICP Asset Management LLC (the "2007-1 CAA," and together with the 2006-1 CAA, the 2006-2 CMA, and the 2007-1 CAA, the "CAAs" ).

9.     Upon information and belief, Interpleader Defendant Triaxx Asset Management LLC ("Triaxx Asset Management" or the "Collateral Manager") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Ohio. Triaxx Asset Management serves as the Collateral Manager for the Issuer under Indentures and (i) the Collateral Management Agreement, dated September 7, 2006, by and between Triaxx Prime CDO 2006-1, Ltd. and ICP Asset Management LLC (the "2006-1 CMA"), (ii) the Collateral Management Agreement, dated December 14, 2006, by and between Triaxx Prime CDO 2006-2, Ltd. and ICP Asset Management LLC (the "2006-2 CMA"), and (iii) the Collateral Management Agreement dated March 29, 2007, by and between Triaxx Prime CDO 2007-1, Ltd. and ICP Asset Management LLC (the "2007-1 CMA," and together with the 2006-1 CMA, the 2006-2 CMA, and the 2007-1 CMA, the "CMAs" ).

10.     Interpleader Defendant Triaxx Prime CDO 2006-1, Ltd. is an exempted corporation organized under the laws of the Cayman Islands. Triaxx Prime CDO 2006-1, Ltd. is the Issuer under the 2006-1 Indenture. Triaxx Prime CDO 2006-1, Ltd. is named as a Defendant because it acquired the Collateral Debt Securities and pledged such securities as Collateral under the Indenture.

11.     Interpleader Defendant Triaxx Prime CDO 2006-2, Ltd. is an exempted corporation organized under the laws of the Cayman Islands. Triaxx Prime CDO 2006-2, Ltd. is the Issuer under the 2006-2 Indenture and the owner of certain Collateral Debt Securities. Triaxx Prime CDO 2006-2, Ltd. is named as a Defendant because the Collateral Debt Securities held under the 2006-2 Indenture are held for its benefit.

12.     Interpleader Defendant Triaxx Prime CDO 2007-1, Ltd. is an exempted corporation organized under the laws of the Cayman Islands. Triaxx Prime CDO 2007-1, Ltd. is the Issuer under the 2007-1 Indenture and the owner of certain Collateral Debt Securities. Triaxx Prime CDO 2007-1, Ltd. is named as a Defendant because the Collateral Debt Securities held under the 2007-1 Indenture are held for its benefit.

13.     Upon information and belief, Interpleader Defendant South Tryon, LLC ("South Tryon") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Ohio. Upon information and belief, South Tryon is a Holder of Class A-1 Notes under the Indenture.

14.     Upon information and belief, Interpleader Defendant Pacific Investment Management Co. LLC ("PIMCO") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Ohio. Upon information and belief, PIMCO is a Holder of Class A-1A Notes and Class A-1B Notes under the 2006-2 Indenture and a Holder (or controls one or more Holders) of Class A-1D Notes and Class A-1T Notes under the 2007-1 Indenture.

15.     Upon information and belief, Interpleader Defendant Phoenix Real Estate Solutions Ltd. is an exempted corporation organized under the laws of the Cayman Islands. Upon

information and belief, Phoenix's principal place of business is located at 459 Broadway, 5th Floor, New York, NY 10013.

16.     Upon information and belief, Interpleader Defendant Cede & Co. ("Cede") is the nominee name of the Depository Trust Company, a limited purpose trust company organized under the laws of the State of New York. Further upon information and belief, Cede is the registered Noteholder of record of the Notes at issue in this Interpleader Complaint, which Notes are held for the ultimate benefit of others.

## BACKGROUND

17.     Pursuant to the Indentures, the Issuers issued certain Notes that are secured by a pool of Collateral Debt Securities and other Collateral. The Notes were issued in various different classes, or tranches, each of which is entitled to certain proceeds generated by the Collateral in a specified Priority of Payments.

18.     Pursuant to the Indentures, the Issuers pledged the Collateral Debt Securities and other Collateral to the Trustee, in order to secure the Issuers' obligations under the Indentures. The Trustee holds the Collateral on behalf of the Noteholders and other Secured Parties under the Indentures, and receives and distributes the available proceeds pursuant to Section 11.1 of the Indentures, referred to as the Priority of Payments waterfall.

19.     Section 11.1(a)(i)(2) of the Indentures describes the payments which are to be made pursuant to the second step of the Priority of Payments waterfall, which payments are made prior to any proceeds being distributed to Noteholders:

> (1) first, to the payment to the Trustee of the accrued and unpaid Trustee Fee; (2) second, to the payment to the Administrator of the accrued and unpaid fees under the Administration Agreement; (3) third, to the payment to the Trustee of accrued and unpaid Trustee Expenses (other than amounts payable pursuant to indemnities) under this Indenture and the Fiscal Agency Agreement (and, if an Event of Default has occurred and is continuing under this Indenture or the Fiscal Agency

Agreement, payment to the Trustee of accrued and unpaid expenses (including amounts payable pursuant to the indemnity)); (4) fourth, to the payment of Rating Agency Expenses; (5) fifth, to the Trustee of Trustee Expenses constituting indemnities; (6) **sixth, to the payment of accrued and unpaid Other Administrative Expenses then due and payable** . . .

(emphasis added).

20.     The Indentures define "Other Administrative Expenses" as "all Administrative Expenses, but excluding Trustee Expenses (other than amounts payable pursuant to any indemnity)." The Indentures define "Administrative Expenses" as:

> (a) Trustee Expenses and (b) all amounts (including indemnities) due or accrued with respect to such Distribution Date and payable by the Issuer or the Co-Issuer to (i) the Administrator in respect of fees and expenses under the Administration Agreement, (ii) the Independent accountants, agents and counsel of the Issuer for reasonable fees and expenses (including amounts payable in connection with the preparation of tax forms on behalf of the Co-Issuers), (iii) the Collateral Manager in respect of fees and expenses pursuant to the Collateral Management Agreement, (iv) any other Person in respect of any governmental fee, registered office fee, charge or tax in relation to the Issuer or the Co-Issuer (in each case as certified by an Authorized Officer of the Issuer or the Co-Issuer to the Trustee), (v) the Placement Agents in respect of amounts payable to them under the Placement Agency Agreement, (vi) the Rating Agencies in respect of Rating Agency Expenses, (vii) any other Person in respect of any other fees or expenses permitted under this Indenture, the Fiscal Agency Agreement, the documents delivered pursuant to or in connection with this Indenture or the Fiscal Agency Agreement and the Notes and (viii) any exchange or any listing agent or paying agent appointed in connection with the listing of the Notes on any exchange; provided that Administrative Expenses shall not include (A) any amounts due or accrued with respect to the actions taken on or in connection with the Closing Date, (B) amounts payable in respect of the Notes or the Trustee Fee, (C) any Management Fee payable to the Collateral Manager and (D) amounts payable under any Hedge Agreement.

*See* Section 1.1 (Definitions).

21.     Section 11.1(a)(i)(2) of the Indentures further provides that all payments made pursuant to subclauses (2) through (6) of the second step of the Priority of Payments waterfall do not exceed on such Distribution Date a certain cap (the "Cap"), which is approximately $175,000

per month for Triaxx 2006-1, and $200,000 per month for each of Triaxx 2006-2 and Triaxx 2007-1.

22.     Section 11.1(a)(i)(4) and Section 11.1(a)(i)(5) of the Indentures describes the payments to be made pursuant to the fourth and fifth steps of the Priority of Payments waterfall. Under these provisions, the Class A-1 and Class A-2 Triaxx 2006-1 Notes; the Class A-1A, Class A-1B, and Class A-2 Triaxx 2006-2 Notes; and the Class A-1T, Class A-1D, and Class A-2 Triaxx 2007-1 Notes (collectively, the "Senior Notes") are to receive interest payments on each periodic Payment Date.

23.     Pursuant to Section 2(b)(vi) of the CAAs, U.S. Bank, as Collateral Administrator, prepares Note Valuation Reports, based in part upon information provided by the Collateral Manager, on behalf the Issuers. Section 10.7(b) of the Indentures, in turn, provides that Note Valuation Reports constitute instructions to U.S. Bank as Trustee to withdraw on the related Payment Date and pay or transfer amounts set forth in the Note Valuation Reports in accordance with the Priority of Payments.

24.     Pursuant to Section 2(g) of the CMAs, the Collateral Manager, "[i]n providing services hereunder" may "employ third parties (including, without limitation, the Collateral Manager's Affiliates) to render advice (including investment advice) and assistance at the Collateral Manager's expense."

25.     Pursuant to Section 8(b) of the CMAs, the Collateral Manager:

[S]hall be responsible for all expenses incurred by it in the performance of its obligations under this Agreement; provided that (i) the fees and expenses of employing outside lawyers on behalf of the Issuer in connection with the purchase and sale of Collateral Debt Securities, Equity Securities or Eligible Investments and the possible amendment, default, bankruptcy or restructuring of any Collateral Debt Security or Equity Security, (ii) reasonable travel expenses in connection with the Collateral Manager's performance of its duties hereunder and (iii) the fees and expenses payable by the Issuer in accordance with the Indenture, including any

fees, expenses or other amounts payable to the Rating Agencies, the Collateral Administrator, the Trustee or the Independent accountants appointed under the Indenture, in each case, shall constitute Administrative Expenses and be reimbursed by the Issuer in accordance with the Indenture; provided, however, that salaries of employees of the Collateral Manager and overhead of the Collateral Manager shall not be included in any of clauses (i) through (iii) as Administrative Expenses.

## THE INSTANT DISPUTE

26.     The Collateral Manager periodically directs U.S. Bank to include invoices in the Note Valuation Reports and pay such invoices out of the available proceeds on each Payment Date as "Other Administrative Expenses" to be paid pursuant to Section 11.1(a)(i)(2), subclause (6). From time to time, the Collateral Manager has directed the payment of invoices from Phoenix Advisors & Managers USA LLC, Phoenix Real Estate Solutions, Phoenix ABS, Aram Phoenix, and Phoenix Real Estate Solutions Ltd.

27.     Pursuant to the Collateral Manager's instruction, these invoices have in the past been included in the Note Valuation Reports and paid pursuant to the Priority of Payments waterfall on each Payment Date, except in respect of the Phoenix Invoices submitted for or outstanding on the most recent Payment Dates and subject to this Interpleader Complaint. Neither the Indentures nor the CAAs provide for U.S. Bank to verify, approve, or investigate the invoices provided by the Collateral Manager before they are included in the Note Valuation Reports or paid on any Payment Date.

28.     On March 29, 2018, the U.S. Bank received from the Collateral Manager Phoenix Invoices to be paid on the next periodic Payment Date—May 2, 2018 for Triaxx 2006-2 and Triaxx 2007-1, and May 3, 2018 for Triaxx 2006-1. The Phoenix Invoices were for the following amounts, each identified as an "Incentive fee":

- Triaxx CDO 2006-1, $8,000,000
- Triaxx CDO 2006-2, $5,500,000
- Triaxx CDO 2007-1, $4,750,000

29.      On or about May 2, 2018, the Trustee received a letter from counsel for PIMCO demanding that the "Trustee cease making payments to the Phoenix Entities." In the letter, PIMCO asserted that Phoenix is an "agent of the Collateral Manager" and "purports to perform a variety of services on its behalf, including analyses of the value of securities in the CDOs." PIMCO then argued that the "Collateral Manager must bear its own expense for the work of its agents" because "[t]he CMAs expressly prohibit such payments to third parties retained by the Collateral Manager" and "[t]here is no authority in the Governing Documents to demand, or for U.S. Bank to make, payments to third parties such as the Phoenix Entities as 'Administrative Expenses.'"

30.      On or about May 3, 2018, the Trustee received an email from counsel for South Tryon objecting to the payment of any "incentive fees" to Phoenix. In the email, South Tryon asserted that Phoenix is an agent or affiliate of the Collateral Manager and that "South Tryon bases its objection upon, among other reasons, concerns arising from the Manager's prior taking of certain fees from Triaxx 06-1 to which it was not entitled, along with other adjudicated breaches of its duties."

31.      The Collateral Manager asserts that the Trustee must pay that portion of the Phoenix Invoices up to the Cap pursuant to Section 11.1(a)(i)(2) of the Indentures on the periodic Payment Dates. PIMCO and South Tyron (as Senior Noteholders of the Triaxx CDOs) demand that the Trustee not make any payment on the Phoenix Invoices on the periodic Payment Dates. If that portion of the Phoenix Invoices are paid as "Other Administrative Expenses," Phoenix will receive funds. However, if any portion of the Phoenix Invoices are not paid as "Other Administrative Expenses," the proceeds allegedly allocable to Phoenix will be available to pay additional amounts owing under the Priority of Payments waterfall and will increase the amount of proceeds available to pay PIMCO and South Tyron, as Senior Noteholders, in the future.

32.     As described above, the Trustee faces irreconcilable demands as to whether to make any payment on the Phoenix Invoices, subject to and in accordance with the terms and conditions of the Indentures. The Collateral Manager insists that the Trustee should pay that portion of the Phoenix Invoices up to the Cap pursuant to Section 11.1(a)(i)(2) of the Indentures. Senior Noteholders PIMCO and South Tyron, on the other hand, have instructed the Trustee not to make any payment on the Phoenix Invoices. The Trustee is therefore unable to determine, without exposing itself to risk of liability, whether to make any payment on the Phoenix Invoices.

33.     There was a Payment Date on May 2, 2018 for Triaxx 2006-2 and Triaxx 2007-1. Because of this dispute, the Trustee withheld funds allegedly allocable to Phoenix under the Priority of Payments waterfall in the amount of $132,743.19 in Triaxx 2006-2 and $146,578.17 in Triaxx 2007-1 (collectively, the "2006-2 and 2007-1 Retained Funds"). Additionally, there was a Payment Date on May 3, 2018 for Triaxx 2006-1. Because of this dispute, the Trustee withheld funds allegedly allocable to Phoenix under the Priority of Payments waterfall in the amount of $136,787.28 (the "2006-1 Retained Funds" and together with the "2006-2 and 2007-1 Retained Funds," the "Retained Funds"). The Trustee is holding these Retained Funds pending the outcome of this Interpleader, and is ready and willing to proceed in the manner in which the Court directs. The Trustee intends to withhold any future funds allegedly allocable to Phoenix under the Priority of Payments waterfall on future periodic Payment Dates.

34.     U.S. Bank has no interest as a claimant in the Retained Funds that are the subject of this dispute, except to the extent of administrative fees and expenses owing to the Trustee and the Collateral Administrator by the Issuer, and its costs and disbursements, including legal fees and expenses, with respect to this action, as may be awarded by the Court.

35.     The above-entitled action is not brought by collusion with any of the Interpleader Defendants.

## PLEA FOR RELIEF

**WHEREFORE**, the Trustee asks this Court:

(i)     to order the Interpleader Defendants to interplead and to settle all claims regarding the Retained Funds and the Phoenix Invoices that are the subject of this dispute among themselves and any other persons who claim or may claim an interest, beneficial or legal, in such Retained Funds under the Priority of Payments waterfall.

(ii)    for a judicial determination as to (a) whether the Phoenix Invoices constitute "Other Administrative Expenses" pursuant to Section 1.1 and Section 11.1(a)(i)(2) of the Indentures, and (b) whether the Trustee is required to apply the Retained Funds in payment of the Phoenix Invoices;

(iii)   to restrain Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the Retained Funds under the Priority of Payments waterfall, from commencing or prosecuting any separate proceeding against the Trustee concerning or relating to the issues in this action;

(iv)    to award the Trustee its costs and disbursements, including legal fees and expenses, with respect to this action and the distribution of funds in dispute; and

(v)     to award the Trustee such other and further relief as the Court may deem just, proper and equitable.

-14-

Dated:          New York, New York
                May 4, 2018

                                              ALSTON & BIRD LLP

                                      By: _____
                                              Alexander S. Lorenzo
                                              Elizabeth A. Buckel
                                              90 Park Avenue
                                              New York, New York 10016
                                              (212) 210-9400
                                              alexander.lorenzo@alston.com
                                              elizabeth.buckel@alston.com

                                              *Attorneys for Interpleader Plaintiff U.S.
                                              Bank National Association, solely in its
                                              capacity as Trustee*