UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                        :
U.S. BANK NATIONAL ASSOCIATION,                         :
*solely in its capacity as Trustee*,                    :
                                                        :
                          Interpleader Plaintiff,       :        Case No. 1:18-cv-04044 (VM)
                                                        :
          - against -                                   :
                                                        :
TRIAXX ASSET MANAGEMENT LLC                             :
(f/k/a ICP ASSET MANAGEMENT LLC);                       :
TRIAXX PRIME CDO 2006-1, LTD.; TRIAXX                   :
PRIME CDO 2006-2, LTD.; TRIAXX PRIME CDO                :
2007-1, LTD.; PACIFIC INVESTMENT                        :
MANAGEMENT COMPANY, LLC; GOLDMAN                        :
SACHS & CO.; PHOENIX REAL ESTATE                        :
SOLUTIONS LTD., CEDE & CO. and                          :
JOHN DOES 1- 100,                                       :
                                                        :
                          Interpleader Defendants.      :
                                                        :
------------------------------------------------------------------x

## ANSWER AND CROSSCLAIMS OF INTERPLEADER DEFENDANT PHOENIX REAL ESTATE SOLUTIONS LTD.

Interpleader Defendant Phoenix Real Estate Solutions Ltd. ("Phoenix"), by and through its undersigned attorneys, hereby answers the allegations of the First Amended Interpleader Complaint filed July 20, 2018 ("Complaint").

Insofar as the allegations in the Complaint pertain to the conduct of any person other than Phoenix, Phoenix denies knowledge or information sufficient to form a belief as to the truth of such allegations.

1.      Phoenix denies the allegations in paragraph 1, except admits that this is an Interpleader action concerning Phoenix's rights to be paid the Phoenix Invoices and Interpleader Legal Fees.[1]

2.      Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, except admits upon information and belief that U.S. Bank serves as the Collateral Administrator and the Trustee for Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2, Ltd., and Triaxx Prime CDO 2007-1, Ltd., except respectfully refers the Court to the documents referenced in paragraph 2 for a complete and accurate statement of their contents.

3.      Phoenix denies the allegations in paragraph 3, except admits upon information and belief that the Collateral Manager periodically directs U.S. Bank to include the Phoenix Invoices in the Note Valuation Reports and pay such invoices out of the available proceeds on the Payment Date, except respectfully refers the Court to the documents referenced in paragraph 3 for a complete and accurate statement of their contents.

4.      Phoenix denies the allegations in paragraph 4.

5.      Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, except admits that Phoenix asserts it is contractually entitled to the payment of Interpleader Legal Fees.

6.      Paragraph 6 purports to state legal conclusions to which no response is required.  To the extent a response is required, Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

---

[1] Unless otherwise noted, capitalized terms have the same meaning as set forth in the Complaint.

7. Paragraph 7 purports to state legal conclusions to which no response is required. To the extent a response is required, Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

8. Paragraph 8 purports to state legal conclusions to which no response is required. To the extent a response is required, Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8, except admits that Phoenix has offices in New York, New York.

9. Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, except admits upon information and belief that U.S. Bank serves as the Collateral Administrator and the Trustee for Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2, Ltd., and Triaxx Prime CDO 2007-1, Ltd.

10. Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10, except admits that Triaxx Asset Management serves as the Collateral Manager for the Issuer.

11. Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

12. Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13. Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14. Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.     Phoenix denies the allegations in paragraph 16, except admits that it has offices at 459 Broadway, New York, NY 10013.

17.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     Phoenix denies the allegations in paragraph 19 except respectfully refers the Court to the documents referenced in paragraph 19 for a complete and accurate statement of their contents.

20.     Phoenix denies the allegations in paragraph 20 except respectfully refers the Court to the documents referenced in paragraph 20 for a complete and accurate statement of their contents.

21.     Phoenix denies the allegations in paragraph 21 except respectfully refers the Court to the documents referenced in paragraph 21 for a complete and accurate statement of their contents.

22.     Phoenix denies the allegations in paragraph 22 except respectfully refers the Court to the documents referenced in paragraph 22 for a complete and accurate statement of their contents.

23.     Phoenix denies the allegations in paragraph 23 except respectfully refers the Court to the documents referenced in paragraph 23 for a complete and accurate statement of their contents.

24.     Phoenix denies the allegations in paragraph 24 except respectfully refers the Court to the documents referenced in paragraph 24 for a complete and accurate statement of their contents.

25.     Phoenix denies the allegations in paragraph 25 except respectfully refers the Court to the documents referenced in paragraph 25 for a complete and accurate statement of their contents.

26.     Phoenix denies the allegations in paragraph 26 except respectfully refers the Court to the documents referenced in paragraph 26 for a complete and accurate statement of their contents.

27.     Phoenix denies the allegations in paragraph 27 except respectfully refers the Court to the documents referenced in paragraph 27 for a complete and accurate statement of their contents.

28.     Phoenix denies the allegations in paragraph 28 except respectfully refers the Court to the documents referenced in paragraph 28 for a complete and accurate statement of their contents.

29.     Phoenix denies the allegations in paragraph 29, except admits upon information and belief that, from time to time, the Collateral Manager has directed proceeds be used to pay Phoenix, and respectfully refers the Court to the documents referenced in paragraph 29 for a complete and accurate statement of their contents.

30.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 except respectfully refers the Court to the documents referenced in paragraph 30 for a complete and accurate statement of their contents.

31.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 except respectfully refers the Court to the document referenced in paragraph 33 for a complete and accurate statement of its contents.

34.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 except respectfully refers the Court to the document referenced in paragraph 34 for a complete and accurate statement of its contents.

35.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 except respectfully refers the Court to the documents referenced in paragraph 35 for a complete and accurate statement of their contents.

36.     Phoenix denies the allegations in paragraph 36 except respectfully refers the Court to the documents referenced in paragraph 36 for a complete and accurate statement of their contents.

37.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 except respectfully refers the Court to the document referenced in paragraph 37 for a complete and accurate statement of its contents.

38.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 except respectfully refers the Court to the document referenced in paragraph 38 for a complete and accurate statement of its contents.

39.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 except respectfully refers the Court to the document referenced in paragraph 39 for a complete and accurate statement of its contents.

40.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41, except admits that the Trustee is withholding funds due to Phoenix.

42.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 except respectfully refers the Court to the document referenced in paragraph 43 for a complete and accurate statement of its contents.

44.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 except respectfully refers the Court to the document referenced in paragraph 44 for a complete and accurate statement of its contents.

45.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47.     Phoenix denies the allegations in paragraph 47 except respectfully refers the Court to the documents referenced in paragraph 47 for a complete and accurate statement of their contents.

48.     Phoenix denies the allegations in paragraph 48.

49.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     Phoenix denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.     Phoenix admits that the action is not brought by collusion with it and otherwise denies the allegations in paragraph 52.

## AFFIRMATIVE DEFENSES

Phoenix states the following affirmative defenses and reserves its right to assert other and additional defenses, cross-claims, and third-party claims not asserted herein of which it becomes aware through discovery or other investigation as may be appropriate at a later time.  In asserting these affirmative defenses, Phoenix does not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden upon another party.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against Phoenix upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Interpleader Plaintiff has not suffered, and will not suffer, injury or damages as a result of any conduct by Phoenix, and therefore is barred from maintaining this action.

## THIRD AFFIRMATIVE DEFENSE

Interpleader Plaintiff does not have a basis to withhold payments to Phoenix because the noteholders' objections to the payments are barred by estoppel, laches, and/or waiver.

## FOURTH AFFIRMATIVE DEFENSE

Interpleader Plaintiff does not have a basis to withhold payments to Phoenix because the noteholders' objections to the payments are barred by the statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

Interpleader Plaintiff does not have a basis to withhold payments to Phoenix because the issuer CDOs are bound by the engagement letters with Phoenix.

## SIXTH AFFIRMATIVE DEFENSE

Interpleader Plaintiff does not have a basis to withhold payments to Phoenix because Phoenix's engagement was ratified by the issuer CDOs and/or the collateral manager had apparent authority to enter into the engagement on behalf of the issuer CDOs.

## <u>CROSSCLAIMS</u>

Phoenix alleges for its crossclaim against Interpleader Defendants Triaxx Prime CDO 2006-1, Ltd. ("Triaxx CDO 2006-1"), Triaxx Prime CDO 2006-2, Ltd. ("Triaxx CDO 2006-2"), and Triaxx Prime CDO 2007-1, Ltd. ("Triaxx CDO 2007-1, "together, with Triaxx CDO 2006-1 and Triaxx CDO 2006-2, the "Issuers") and Interpleader Defendants Pacific Investment Management Company, LLC and Goldman Sachs & Co. (together, the "Noteholders") as follows:

## **NATURE OF THE ACTION**

53.     Phoenix seeks to recover unpaid fees for analytical and litigation support services it has provided to the Issuers that have conferred, and continue to confer, benefits on the Issuer and its Noteholders that add up to hundreds of millions of dollars.  Beginning in 2011, each Issuer hired Phoenix pursuant to an engagement letter, and agreed to pay Phoenix for its services.  Over the last seven years, the Issuers (and its Noteholders) have accepted and enjoyed the benefits of Phoenix's services.  Because of Phoenix's efforts, the Issuers have recovered tens of millions of dollars arising out of deficiencies in the underwriting, origination, securitization, and servicing of the residential mortgage-backed securities ("RMBS") that are owned by each of the Issuers, and pledged to U.S. Bank, N.A. (the "Trustee") as trustee for the Noteholders.  The Issuers are due to receive at least tens of millions more based on judgments obtained through Phoenix's efforts that will be paid upon the resolution of the Residential Capital ("Rescap") bankruptcy.  Correspondingly, the Issuers paid Phoenix in accordance with the engagement letters for approximately seven years without complaint.

54.     Despite the Issuers' and Noteholders' acceptance of Phoenix's services over the course of seven years, and the substantial recoveries obtained by the Issuers and the Noteholders as a result of those services, in May 2018, the Trustee abruptly took the position that it did not know whether Phoenix was entitled to payment and brought the instant interpleader action (the "Action").  As Phoenix has now learned, certain Noteholders objected to the Issuers paying Phoenix for services rendered and claim that the collateral manager, as opposed to the Issuers, should pay Phoenix.  The Noteholders are embroiled in another litigation with the collateral manager, and their objections *seven years* after the commencement of the engagement with Phoenix are nothing more than a transparent and improper litigation tactic.

55.     There is simply no basis for the Issuers, or the Trustee which acts on instructions from the Issuers, to withhold payment in accordance with the engagement letters. The Issuers contracted with Phoenix for services, received those services, and now must pay Phoenix what it is owed.  Phoenix is continuing to perform pursuant to the engagement letters and is entitled to be compensated accordingly.

56.     Additionally, as set forth in the engagement letters, the Issuers promised to indemnify Phoenix for any and all losses or liabilities, including attorneys' fees and legal expenses, arising from Phoenix's work for the Issuers.  Thus, Phoenix's legal fees incurred in connection with this Action must be reimbursed by the Issuers.

## FACTS

**The Engagement Letters**

57.     On March 22, 2011, the Issuers each executed identical engagement letters with ARAM Phoenix Real Estate Solutions Ltd (the "Engagement Letters").  *See* Exs. A, B, & C.  Phoenix was previously referred to as ARAM Phoenix Real Estate Solutions Ltd. but later changed its name.  The Engagement Letters were executed on the Issuers' behalf by their agent, ICP Asset Management, LLC ("ICP"), which served as collateral manager.

58.     Under the Engagement Letters, the Issuers engaged Phoenix to provide "information and advice to, the Collateral Manager, with respect to strategies to optimize the performance of the Designated Portfolio."  *Id.* § 2.  This included reviewing and analyzing the Designated Portfolio, collateral, and cash flows, as well as determining the optimization potential of the Designated Portfolio.  *Id.*  The Engagement Letters also provided that Phoenix would "provide activist implementation services."  *Id.*  Activist implementation services included analyzing borrower data, recommending strategies for mitigating defaults and refinancing, and assisting the Issuer and the Collateral Manager in pursuing servicer remedies.  *Id.*

11

59.     The Engagement Letters provided that, in exchange for Phoenix's services, the Issuers would pay Phoenix a monthly due diligence fee.  *See id.* at Annex II.  For example, Triaxx CDO 2006-1 agreed to pay Phoenix $30,000 per month for the first two years of the engagement, $20,000 in the third and fourth years of the engagement, and $15,000 for every month thereafter.  *See* Ex. A at Annex II.

60.     The Issuers also agreed to pay Phoenix an "Activist Implementation Fee" of $10,000 per month for each security for which it provided activist implementation services. *Id.* at Annex I, p. 12; *see also* Ex. B at Annex I, p. 12; Ex. C at Annex I, p. 12.  The Activist Implementation Fee would be due once it exceeded $250,000 for a security or once the "recovery of funds or assets related to such security" was complete.  *See id.*  The Engagement Letters also provided for an incentive fee.  If "funds or assets recovered by [the Issuer] relating to a security exceeds $500,000, [the Issuer] shall pay to [Phoenix] an aggregate amount of Activist Implementation Fees in respect of such security . . . equal to $250,000."  *See id.*

61.     The Engagement Letters further provided that "the payment of all amounts to which [Phoenix] is entitled . . . shall be as an Administrative Expense subject to the Priority of Payments as described in the Indenture."  *Id.* § 12.  Phoenix understood that the Indenture for Triaxx CDO 2006-1 imposed a monthly cap of $175,000 for Administrative Expenses, while the Indentures for the other two Issuers imposed a cap of $200,000 for such expenses.  Accordingly, it was possible that Phoenix would be paid a portion of its monthly fees while the outstanding amount would be paid over the following months, depending on the amount of Administrative Expenses the Issuers owed to others.

62.     In the Engagement Letters, each Issuer represented that "[i]t has the full power and authority to enter into and consummate all transactions contemplated by this Agreement." *Id.* § 3.

63.     The Issuers also agreed that they "shall indemnify and keep indemnified [Phoenix] from and against any and all Liabilities which may be suffered or incurred by or asserted against [Phoenix] arising out of or in connection with the performance of its or their duties hereunder except such as may be due to the fraud or willful misconduct of [Phoenix]." *Id.* § 8.

64.     The parties further confirmed their agreement concerning the payment of incentive fees in three identical letters, dated August 8, 2014, from Phoenix to the Issuers, care of the collateral manager.  In particular, those letters provided that Phoenix's incentive fees could be paid from settlement proceeds.  The Issuers confirmed that they agreed with those terms by approving the payment of Phoenix's incentive fees in accordance with those letters.

**Phoenix's Work Under the Engagement Letters**

65.     Phoenix began its work for the Issuers in 2011.  Phoenix sent its monthly invoices to the Collateral Manager—first ICP, and later, Triaxx Asset Management LLC.

66.     Phoenix understood that the Collateral Manager sought payment approval from the Issuers.  For seven years between 2011 and the commencement of this Action, the Issuers paid Phoenix in accordance with the Engagement Letters without objection by the Trustee or Noteholders.  Upon information and belief, the Issuers' payments to Phoenix were disclosed to the Noteholders in monthly reports by the Trustee.

67.     Phoenix played a substantial role in enabling the Issuers to secure recoveries of over $100 million by identifying and analyzing deficiencies in the underwriting,

origination, securitization, and servicing of the residential mortgage-backed securities that are owned by the Issuers and held by the Trustee as collateral for the benefit of the Noteholders.

68.     Phoenix has been able to provide this significant assistance through its systems and technology that it built from scratch.  In order build this technology, which no one had successfully done before, Phoenix expended tremendous efforts and its own funds.  It purchased servers and entered into expensive data contracts and spent years working with a team of experienced bankers and software engineers designing, implementing, and fine tuning a database of all real estate transactions in the United States over a decade.  Without this painstaking work, the Issuers and the Noteholders would not have received the significant benefits that are discussed below.

69.     As one example of how the systems have worked to the Issuers' benefit, a February 3, 2013 *New York Times* article describes how the database enabled the Issuers to analyze securities issued by Countrywide and identify misconduct by Bank of America in connection with loan modifications.  *See* Ex. D.

70.     Additionally, with Phoenix's substantial assistance the Issuers executed a confidential settlement agreement with a bank on August 27, 2014, which represented a significant victory for the Issuers.  In particular, Phoenix formulated the key theory for that matter and provided analytical support that enabled the Issuers to support their theory.  Again, because no one had previously performed this kind of analysis, Phoenix had to test multiple theories and analyze data over the course of many months in order to secure results for the Issuers.

71.     In connection with the Issuers' intervention in Rescap's bankruptcy proceeding, Phoenix provided a different methodology of allocating representation and warranty

losses which enabled the Issuers to secure tens of millions of dollars more than they would have absent Phoenix's assistance.  Phoenix was the architect of the theory that the proposed settlement allocation, which distributed the settlement proportionally across all tranches, unfairly disadvantaged senior noteholders because junior noteholders had expected certain losses and were compensated by higher coupons.  In contrast, senior noteholders purchased credit enhancements and expected significantly lower losses than junior noteholders, and accordingly, received lower coupons.  Thus, allocating the settlement proportionally regardless of tranche would give junior noteholders a windfall because they had already received a higher coupon.  Phoenix's proprietary systems calculated the expected losses of junior tranches as compared to the unexpected, actual losses and showed how the settlement should be allocated to avoid unfairly benefitting junior noteholders.

72.     Phoenix's role in the Rescap bankruptcy is documented in a September 8, 2012 *New York Times* article titled "How to Find Weeds in a Mortgage Pool."  *See* Ex. E.  Although it did not refer to Phoenix by name, the references to "Triaxx's technology" are references to Phoenix's systems.  Additionally, the article notes that Phoenix's systems undermined the arguments of Rescap that it would be a "herculean task to examine the loans in the trusts to determine the validity of each investor's claims."  *See id.*  With Phoenix's systems, "it took only seven weeks or so to do a forensic analysis of the roughly 20,000 loans held by the trusts in which it is an investor."  *See id.*  The article further notes that Phoenix's technology is able to identify loans with inflated appraisals, properties that were not owner-occupied, and mortgages for which the borrowers failed to make even a single payment.  *See id.*

73.     These recoveries have directly and substantially benefitted the Issuers and the Noteholders.  Upon information and belief, Phoenix's role in securing these victories for the

Issuers and Noteholders were disclosed to and known or reasonably knowable by the Noteholders.

74.    Phoenix continues to assist the Issuers in ongoing lawsuits against trustees where the Issuers are asserting claims for tens of millions of dollars, and in at least two cases, over $100 million each.  Phoenix's assistance has been crucial because Phoenix is able to provide detailed loan-by-loan analyses, while other plaintiffs that can only provide sampling or broadly plead their damages have failed because they do not have Phoenix's capabilities.

**The Issuers Cease Payments Without Justification**

75.    In or about May 2018, Phoenix learned that the Trustee refused to implement the process of having the Issuers pay Phoenix for its services rendered as required under the Engagement Letters.

76.    From the Trustee's interpleader complaint, Phoenix understands that certain Noteholders objected to having the Issuers pay Phoenix as required by the Engagement Letters and as the Issuers and the Trustee had been doing without objection for seven years before such objections were raised.

77.    Phoenix understands that the Noteholders assert that the Collateral Manager, rather than the Issuers, should pay Phoenix's bills.  Phoenix further understands that the Collateral Manager and the Noteholders are adversaries in a litigation concerning the sale of certain collateral.  Phoenix cannot help but conclude that this action is merely a litigation tactic perpetrated by the Noteholders to put pressure on the Collateral Manager in this other action.

78.    The Noteholders' objections do not alter in any way the Issuers' obligations to pay Phoenix pursuant to the Engagement Letters.

79.    Phoenix continues to perform under the Engagement Letters.

**The Issuers Fail to Indemnify Phoenix**

80.    The Trustee commenced this Action in or about May 2018, naming

Phoenix as an interpleader defendant.

81.    On or about June 5, 2018, Phoenix demanded that the Issuers indemnify it

for all expenses, including legal fees, incurred in defending the Action.

82.    As of the date of this Answer & Crossclaim, the Issuers have not

responded to Phoenix's demand, and have not indemnified Phoenix.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT AGAINST THE ISSUERS)**

83.    Phoenix repeats and re-alleges the allegations as set forth in paragraphs 1

through 82 as if fully set forth herein.

84.    Phoenix and the Issuers entered into the Engagement Letters, which are

binding and valid contracts.

85.    Phoenix has performed its obligations under the Engagement Letters.

86.    The Issuers are obligated to pay Phoenix's fees under the Engagement

Letters.

87.    The Issuers, through the Trustee, have failed to pay Phoenix the amounts

owed under the Engagement Letters, and thereby breached their obligations thereunder.

88.    By reason of the foregoing, Phoenix has sustained damages in amounts to

be determined at trial, but estimated to be not less than approximately $20.9 million, plus pre-

judgment interest and expenses.

**SECOND CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE, FOR UNJUST ENRICHMENT AGAINST THE ISSUERS)**

89.    Phoenix repeats and re-alleges the allegations as set forth in paragraphs 1

through 88 as if fully set forth herein.

17

90.     As alleged above, the Engagement Letters are binding and enforceable agreements that have been performed without objection for seven years.  However, the Noteholders have asserted that the Issuers are somehow free to disregard the terms of the Engagement Letters, and that the Engagement Letters are somehow unauthorized.  Based on the Noteholders' assertions, the Trustee has refused to implement the process for payment to Phoenix under the terms of the Engagement Letters.

91.     Phoenix asserts this crossclaim against the Issuers in the alternative event that the Court were to find that the Issuers were not bound by the Engagement Letters.

92.     Phoenix's performance of its services has conferred substantial benefits upon the Issuers, and the Issuers have accepted and reaped the benefit of Phoenix's performance for seven years without objection.

93.     The Issuers have reaped substantial benefits—totaling in excess of $100 million dollars—at the expense of Phoenix, and it would be unjust for the Issuers to retain those benefits.

94.     By reason of the foregoing, Phoenix is entitled to a judgment awarding it damages in an amount to be determined at trial, but not less than approximately $20.9 million, plus pre-judgment interest and expenses.

## THIRD CLAIM FOR RELIEF
### (INDEMNIFICATION AGAINST THE ISSUERS)

95.     Phoenix repeats and re-alleges the allegations as set forth in paragraphs 1 through 94 as if fully set forth herein.

96.     Phoenix and the Issuers entered into the Engagement Letters, which are binding and valid contracts.

97.     Phoenix performed its obligations under the Engagement Letters.

18

98.     The Issuers are obligated to indemnify Phoenix for all expenses, including the fees and expenses of legal counsel, incurred in defending this Action.

99.     In breach of the Engagement Letters, the Issuers have failed to indemnify Phoenix.  As a result, Phoenix has been damaged, and continues to be damaged, in amounts to be determined at trial.

100.    The Issuers are obligated to promptly indemnify and hold harmless Phoenix for all expenses, including legal fees, that it has incurred and will incur, in defending this Action.

## FOURTH CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH CONTRACT AGAINST THE NOTEHOLDERS)

101.    Phoenix repeats and re-alleges the allegations as set forth in paragraphs 1 through 100 as if fully set forth herein.

102.    Phoenix and the Issuers entered into the Engagement Letters, which are binding and valid contracts.

103.    The Noteholders knew that Issuers had engaged Phoenix to perform work for them.

104.    After seven years, the Noteholders objected, without justification, to the Issuers paying Phoenix.  The Noteholders contend that the Collateral Manager should pay Phoenix instead.  The Noteholders are adverse to the Collateral Manager in another lawsuit and are acting with malice in objecting to the Issuers' payment of Phoenix.

105.    As a result of the Noteholders' objections, the Issuers breached the Engagement Letters and ceased paying Phoenix.

106.     By reason of the foregoing, Phoenix has sustained damages in amounts to be determined at trial, but estimated to be not less than approximately $20.9 million, plus pre-judgment interest and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Phoenix demands judgment against the Issuers and the Noteholders as follows:

(a)     Awarding Phoenix damages against the Issuers for breach of contract in an amount to be determined at trial, but in any event no less than approximately $20.9 million, plus pre-judgment interest and expenses;

(b)     In the alternative, directing the Issuers to pay restitution to Phoenix as a result of the Issuers' unjust enrichment in an amount to be determined at trial, but in any event no less than approximately $20.9 million, plus pre-judgment interest and expenses;

(c)     Declaring that the Issuers are in breach of their obligation to indemnify Phoenix and awarding damages in an amount to be determined at trial;

(d)     Awarding Phoenix damages against the Noteholders for tortious interference with the Engagement Letters in an amount to be determined at trial, but in any event no less than approximately $20.9 million, plus pre-judgment interest and expenses;

(e)     Awarding Phoenix its attorneys' fees and all other costs reasonably incurred in defense of this action; and

(f)     Granting Phoenix such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 27, 2018

                                        FRIEDMAN KAPLAN SEILER &
                                          ADELMAN LLP

                                        s/ Eric Seiler
                                        Eric Seiler (eseiler@fklaw.com)
                                        Andrew W. Goldwater (agoldwater@fklaw.com)
                                        Priyanka Wityk (pwityk@fklaw.com)
                                        7 Times Square
                                        New York, NY 10036-6516
                                        (212) 833-1100

                                        *Attorneys for Interpleader Defendant Phoenix Real Estate Solutions Ltd.*