USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/8/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION,

Plaintiff,

-against-

TRIAXX ASSET MANAGEMENT LLC, et al.,

Defendants.

18-cv-4044 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By letter-motion dated September 23, 2019 (Trustee Ltr.) (Dkt. No. 274), plaintiff U.S. Bank National Association, in its capacity as trustee (Trustee) of the three collateralized debt obligations at issue in this action (the Triaxx CDOs), requests an order compelling defendants Triaxx Asset Management LLC (TAM), the CDOs' Collateral Manager, and Phoenix Real Estate Solutions, Ltd. (Phoenix), which was retained by the Collateral Manager as an adviser and consultant to the CDOs (collectively the TAM Parties), to produce documents and communications showing the compensation of the TAM Parties' partners, owners, officers, and directors (including Nicholas Calamari and Vishal Garg), as well as the partners, owners, officers and directors of 1/0 Capital, LLC (1/0 Capital). Trustee Ltr. at 1. Defendants Pacific Investment Management Company (PIMCO) and Goldman Sachs & Co., which hold notes issued by the CDOs (the Noteholders), join in the request. *Id.*[1]

Among the issues in this action is the propriety of various fee payments directed to Phoenix by TAM, some of which TAM characterized as "Administrative Expenses," to be paid

---

[1] The Trustee also sought to compel the TAM Parties to produce the Code of Ethics referenced in TAM's March 12, 2015 and March 30, 2018 Form ADVs. *See* Trustee Ltr. at 1, 4. This portion of the Trustee's letter-motion was granted from the bench on October 3, 2019. *See* Tr. of Oct. 3, 2019 Conf. (Dkt. No. 288) at 62:18.

by the Trustee before distributing any CDO proceeds to the Noteholders pursuant to the CDOs' priority of payment waterfall (the Waterfall), and some of which it allegedly paid outside of the Waterfall entirely – without notice to the Trustee – directly from funds that were recovered through litigation against originators, sponsors, trustees, and servicers of the residential mortgage backed securities (RMBS) held by the Triaxx CDOs and/or the mortgages underlying the RMBS, and which were never deposited in the CDO accounts controlled by the Trustee. *See* Third Amended Interpleader Complaint (TAC) (Dkt. No. 203) ¶¶ 1-11, 48-61. The Trustee alleges that these arrangements violated the indentures and other documents governing the Triaxx CDOs (the Governing Documents), as well as the Uniform Commerical Code. *Id*. ¶¶ 90-93.

Plaintiff argues that the compensation-related discovery it seeks is relevant to its allegations that both TAM and Phoenix are indirectly owned and controlled (through 1/0 Capital) by Calamari and Garg, TAC ¶¶ 86-88, such that the disputed payments "benefit both Garg and Calamari." TAC ¶ 89. According to the Trustee, this "significant conflict of interest," Trustee Ltr. at 2, helps explain why TAM failed to deliver the litigation proceeds to the Trustee to distribute through the Waterfall and instead "improperly enriched Phoenix at the expense of the CDOs and the Secured Parties," including the Noteholders. *Id*. ¶ 85. The Trustee further contends that it needs compensation information to "demonstrate" the alleged conflict of interest by showing that Garg and Calamari personally benefited from the challenged transactions. Trustee Ltr. at 3.

By letter dated September 26, 2019 (TAM Ltr.) (Dkt. No. 276), the TAM Parties object to the requested discovery, arguing that the Governing Documents acknowledge that the Collateral Manager may have conflicts of interest, and therefore the Trustee's allegations are "wholly gratuitous" and have "no bearing on any claim or defense in this case." TAM Ltr. at 2-3.

Even if the alleged conflict were relevant, the TAM Parties argue, they have already produced (or agreed to produce) documents sufficient to litigate that issue, including the actual payments to Phoenix, as well as documents showing the TAM Parties' annual revenues and profits, "and the percentage that come from work on behalf of the CDOs." *Id*. at 2. Moreover, according to the TAM Parties, discovery into the personal compensation of non-parties such as Garg and Calamari would be unduly invasive, and thus disproportionate to the needs of the case, particularly since it would have "limited probative value." *Id*. at 3.

Given the broad scope of discovery permitted pursuant to Fed. R. Civ. P. 26(b)(1), the Court is not prepared, at this juncture, to prohibit inquiry into facts that have been alleged by the Trustee and/or the Noteholders and denied (either outright or for lack of sufficient knowledge or information) by the TAM Parties, thus putting them presumptively at issue in this action. *Compare*, *e.g*., TAC ¶ 89 ("The Collateral Manager, 1/0 Capital, and the Phoenix Entities share the same office address, the same floor, and the same conference rooms, and payments to the Phoenix Entities benefit both Garg and Calamari.") *with* TAM Ans. (Dkt. No. 211), ¶ 89 ("Triaxx admits that TAM's offices are located in this district, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89.").[2]

Moreover, while the Court is sensitive to the privacy isues raised by the TAM Parties, their concerns are somewhat overstated (and the cases they cite are largely inapposite),

---

[2] As another example, *compare* PIMCO Ans. (Dkt. No. 212) ¶ 100 ("TAM's owners are lining their pockets by using Phoenix . . . and the other Phoenix Entities as agents to siphon funds out of the CDO Collateral that would otherwise be available to pay Noteholders in the CDOs, such as PIMCO"); *with* Phoenix Ans. (Dkt. No. 219) ¶ 8 ("Phoenix denies the allegations in paragraph 100. Phoenix's work has enabled the noteholders to secure millions of dollars in litigation recoveries.").

because the only "personal financial information" sought by the Trustee is information concerning the compensation of the TAM Parties' principals by the TAM Parties themselves. *Cf. Solow v. Conseco, Inc.*, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008) (quashing subpoena for information concerning non-party Macklowe's overall "financial condition" because "Conseco's knowledge of Plaintiff's and Macklowe's relative financial wherewithal at the time of the auction" was relevant to the parties' claims and defenses, but "Macklowe's actual financial situation" was not); *Arias-Zeballos v. Tan*, 2007 WL 210112, at *2 (S.D.N.Y. Jan. 25, 2007) (quashing subpoena seeking financial records concerning defendant's purchase of an apartment after court struck the underlying allegations from the plaintiff's complaint); *Davis v. Ross*, 107 F.R.D. 326, 327 (S.D.N.Y. 1985) (denying defamation plaintiff's request for discovery into the "net worth and annual income" of defendant Diana Ross because, under New York law, such discovery "will become necessary only in the event plaintiff obtains . . . a special verdict" entitling her to punitive damages); *Taylor v. Metro. Transportation Auth.*, 2019 WL 2766502, at *3 (S.D.N.Y. July 2, 2019) (denying defendant's request, in employment discrimination case, for all of plaintiff's "personnel records from her other places of employment," where there were less intrusive ways to verify her past employment history).

That said, the Trustee's request for information concerning the compensation of all of the "partners, owners, officers, and directors" of TAM, Phoenix, its affiliates, and 1/0 Capital, *see* Trustee Ltr. at 1, is overbroad. Consequently, the Trustee's letter-motion is GRANTED to the extent that TAM and Phoenix must produce documents sufficient to show all compensation paid or owed to Calamari and Garg, directly or indirectly, by TAM, Phoenix, the Phoenix Entities, and/or 1/0 Capital, and otherwise DENIED. The TAM Parties may designate the compensation information "confidential" if they believe it qualifies for such treatment under the parties'

4

Stipulated Protective Order (Dkt. No. 179). Production is to be made within 30 days of this Order.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 274.

Dated: New York, New York
January 8, 2020

                                          **SO ORDERED.**

                                          _____

                                          **BARBARA MOSES**
                                          **United States Magistrate Judge**