UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/30/2020
```

U.S. BANK NATIONAL ASSOCIATION,

          Plaintiff,

      -against-

TRIAXX ASSET MANAGEMENT LLC,
et al.,

          Defendants.

18-CV-4044 (BCM)

**ORDER RE INTERROGATORIES**

**BARBARA MOSES, United States Magistrate Judge**.

By letter-motion dated February 24, 2020 (TAM Ltr.) (Dkt. No. 306), defendants Triaxx Asset Management LLC (TAM) and Phoenix Real Estate Solutions Ltd. (Phoenix) (collectively the TAM Parties) sought an order compelling defendant Pacific Investment Management Company, LLC (PIMCO) to answer five interrogatories, all of which asked PIMCO to identify various persons who, according to the TAM Parties, are likely to have "knowledge relevant to the subject matter of the action." TAM Ltr. at 2 (quoting Local Civil Rule 33.3(a)).[1] In its initial written responses, PIMCO refused to answer any of the five. *See* TAM Ltr. Ex. 3.

On February 27, 2020, PIMCO filed an opposition letter-brief (PIMCO Ltr.) (Dkt. No. 309) promising an answer to Interrogatories No. 1 and 2 but standing on its objections to Interrogatories No. 3-5. On March 2, 2020, the TAM Parties filed a reply letter (TAM Reply Ltr.) (Dkt. No. 311), stating that PIMCO had "identified one person . . . with relevant knowledge" but that its response remained inadequate. TAM Reply Ltr. at 1-2.[2]

---

[1] The TAM Parties sought the same relief, with respect to a similar set of interrogatories, against defendant Goldman Sachs & Co. LLC (GS&Co.) Since then, however, GS&Co. has dismissed its claims in this action (Dkt. No. 321) and the TAM Parties have withdrawn the motion to compel as against GS&Co. (Dkt. Nos. 320, 322.)

[2] It is not clear whether PIMCO served a further written response containing this information or communicated it informally. No supplemental written interrogatory responses were submitted.

No conference is required. The TAM Parties' letter-motion will be granted in part and denied in part as follows.

**Interrogatory No. 1** asks PIMCO to "[i]dentify each person who, during the period from 2006 to the present, has worked in PIMCO's 'Securitized Debt' group, as that term is used on the web page found at https://www.pimco.com/en-us/experts/giang-bui, or any predecessor or successor thereof."  The web address contained within the interrogatory points to the biography of Giang Bui, whose title is "Portfolio Manager, Securitized Debt," and who is further described as an "executive vice president in the Newport Beach office" who joined PIMCO in 2000 and serves as "a portfolio manager and trader of securitized debt instruments, focusing on collateralized loan obligations (CLOs), asset-backed collateralized debt obligations, and off-the-run sectors within structured products." Perhaps not surprisingly, the one person identified by PIMCO in response to this interrogatory was Ms. Bui. TAM Reply Ltr. at 1.

The threshold question here is whether the information sought is nonprivileged, "relevant to any party's claim or defense," and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). As Local Rule 33.3(a) recognizes, the identity of "witnesses with knowledge" of such information presumptively meets the relevance prong of the test. The parties disagree, however, as to whether every member of Ms. Bui's group has or is likely to have such knowledge.[3] The TAM Parties reason that since Ms. Bui "worked with others on matters concerning the Triaxx CDOs," "[o]ther employees who worked in the same group . . . likely have knowledge of PIMCO's

_____

[3] They also disagree about whether PIMCO has a Securitized Debt Group. *See* PIMCO Ltr. at 1-2.  However, PIMCO did not raise that objection in its written responses, or during the parties' pre-motion meet-and-confer, TAM Reply Ltr. at 2, and the TAM Parties now take the position that if there is no Securitized Debt group, they will accept information concerning everyone "in the same group as Ms. Bui." *Id.* The outcome of Interrogatory No. 1 therefore will not turn on the precise title of Ms. Bui's group.

decisions to buy and hold the notes" issued by those CDOs (the Notes), as well as "Phoenix's engagement and work on behalf of the CDOs, and PIMCO's awareness of litigation recoveries." TAM Reply Ltr. at 1-2.

I am not persuaded. The TAM Parties' argument is based on two layers of speculation: first, that because Ms. Bui worked on unidentified "matters concerning the Triaxx CDOs," she has knowledge of the actual claims and defenses in this case,[4] and second, that everyone else in her group (the name, size, location, and organization of which is unknown) "likely" has the same knowledge. Absent a more convincing showing, I will not require PIMCO to reveal its employee directory to the TAM Parties.

**Interrogatory No. 2** asks PIMCO to "[i]dentify each person who was involved in Your decision to purchase, sell, or hold any Notes." The TAM Parties explain that "persons with knowledge of the Noteholders' decisions to buy and hold the Triaxx CDO notes can speak to the validity of the Noteholders' allegations that Phoenix was not properly engaged or paid; the Movants' affirmative defenses that the Noteholders and the Trustee ratified Phoenix's engagement; and Phoenix's crossclaims for unjust enrichment, promissory estoppel, and quantum meruit based on the significant benefits to the CDOs and the Noteholders, resulting from Phoenix's work." TAM Ltr. at 3.

Once again, I am not persuaded that the interrogatory as written meets the basic relevance standard of Rule 26(b), which is the TAM Parties' burden, *see Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013), and which – although not a heavy one – must be met

---

[4] Under Rule 26(b), as most recently amended in 2015, is is not enough that the proposed discovery be relevant to the "subject matter" of the action; it must be relevant to the actual claims and defenses pleaded by the parties. *See* Fed. R. Civ. P. 26(b) advisory committee note to 2015 amendment (noting that the amendment "deleted the former provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action").

before the Court considers privilege or proportionality. *See Shaub & Williams, L.L.P. v. Augme Techs., Inc.*, 2014 WL 1033862, at *4 (S.D.N.Y. Mar. 17, 2014). At bottom, I am not convinced that a person "involved" in buying or selling Notes is for that reason likely to be knowledgeable about, for example, the highly technical legal questions underlying PIMCO's position that Phoenix "was not properly engaged or paid." Even assuming, *arguendo*, that some of the PIMCO personnel responsible for buying or selling Notes could "speak to" one or more issues genuinely relevant to the parties' claims and defenses, I would find the interrogatory overbroad, disproportional, and somewhat difficult to apply insofar as it asks PIMCO to disclose the names of everyone "involved" in such decisions in any capacity.

PIMCO states that the "trading decisions with respect to the Notes resided with the Portfolio Manager identified in PIMCO's initial disclosures." PIMCO Ltr. at 2. To the extent they have not already done so, the TAM Defendants may examine that person at deposition, and on that basis (or perhaps on the basis of information learned pursuant to Rule 30(b)(6) or from other sources) may well identify other PIMCO personnel with discoverable knowledge, or serve a more tailored interrogatory. I will not, however, require PIMCO to respond further to Interrogatory No. 2 as written.

**Interrogatories No. 3-5** ask PIMCO to "[i]dentify each person who reviewed or approved" the three objections that were sent by PIMCO's outside counsel to plaintiff U.S. Bank National Association, as Trustee of the Triaxx CDOs (the Trustee), on May 2, 2018, May 18, 2018, and February 14, 2019, and that underlie the three interpleader claims now before the Court (as well as PIMCO's counterclaim to the *res*). PIMCO claims that this information is irrelevant, because there is no dispute as to the existence or content of the objections, and that it is shielded from discovery by the attorney-client privilege and the work product doctrine, because the objections

4

were the "culmination of a legal process" and PIMCO reasonably anticipated litigation when they were being prepared. PIMCO Ltr. at 2-3. As to relevance, the TAM Parties respond that the validity of the interpleader claims (which they have challenged pursuant to Fed. R. Civ. P. 12(c)) depends on the Trustee's "risk of liability," which in turn "depends in part on whether the Noteholders actually intend to sue the Trustee, and whether their objections were genuine." TAM Reply Ltr. at 2. As to privilege, the TAM Parties argue that while the content of confidential communications between PIMCO's outside counsel and their client representatives may be privileged, the identities of those client representatives – that is, individuals who "reviewed or approved" the objections – cannot be withheld on that basis. TAM Reply Ltr. at 2-3.

The TAM Parties are half-right on the relevance point. The Trustee's "risk of liability" turns on whether the interpleader plaintiff – here, the Trustee – had "a real and reasonable fear of double liability or vexatious, conflicting claims," *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 476 (E.D.N.Y. 2019) (quoting *Hartford Life Ins. Co. v. Simonee*, 2015 WL 8490998, at *3 (E.D.N.Y. Dec. 10, 2015)), not whether the competing claimants – here, including PIMCO – were or are planning, subjectively, to carry through with whatever threats they made or implied. However, the PIMCO decisionmakers who signed off on the objection letters and email may well possess discoverable information going to related issues such as whether there were any "agreements between the Noteholders and the Trustee." TAM Reply Ltr. at 2. The individuals who made the decision to object are also likely (in any event, more likely than the individuals who were involved only in buying and selling Notes) to be able to "speak to the validity of the Noteholders' allegations" underlying PIMCO's objections. TAM Ltr. at 3.

The TAM Parties are also correct with regard to the attorney-client privilege and the work product doctrine. The identity of a lawyer's client is ordinarily not shielded by either the attorney

client privilege or the work product doctrine. *See*, *e.g.*, *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 288 (S.D.N.Y. 2002) ("It is well-established in the Second Circuit that a client's identity is not protected by the attorney-client privilege."); *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 69 n.5 (S.D.N.Y. 2009) ("[T]here is no privilege as to a client's identity."). PIMCO has not identified any authority, and the Court is aware of none, that would suggest a different rule where, as here, the client is a corporation, which necessarily speaks to its attorney through one or more officers, directors, or employees. Thus, while I will not require PIMCO to disclose the names of everyone who "reviewed" the three objections (a group which could extend to multiple lawyers and clerical personnel, both in-house and employed by the lawyers who signed the objections), PIMCO must identify the decisionmakers who "approved" the three objections sent by its outside counsel to the Trustee.

For the reasons set forth above, the TAM Parties' letter-motion (Dkt. No. 306) is GRANTED to the extent that PIMCO must promptly supplement its interrogatory responses to identify the decisionmakers who approved each of the objections underlying the interpleader claims in this action, and otherwise DENIED.

Dated: New York, New York
        November 30, 2020

                              **SO ORDERED.**

                              **BARBARA MOSES**
                              **United States Magistrate Judge**