UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2021

U.S. BANK NATIONAL ASSOCIATION,

          Plaintiff,

     -against-

TRIAXX ASSET MANAGEMENT LLC,
et al.,

          Defendants.

18-CV-4044 (BCM)

**ORDER RE PRIVILEGE LOG**

**BARBARA MOSES, United States Magistrate Judge**.

By letter-motion dated July 28, 2020 (Trustee Ltr.) (Dkt. No. 315), plaintiff U.S. Bank National Association (U.S. Bank or Trustee), which brought this action in its capacity as trustee of three collateralized debt obligations known as Triaxx Prime CDO 2006-1 (Triaxx 2006-1), Triaxx Prime CDO 2006-2 (Triaxx 2006-2), and Triaxx Prime CDO 2007-1 (Triaxx 2007-1) (collectively the CDOs), seeks an order compelling defendant Triaxx Asset Management LLC (TAM), which is the Collateral Manager for the CDOs, and its affiliate, defendant Phoenix Real Estate Solutions Ltd. (Phoenix) (collectively the TAM Parties) to amend their categorical privilege log, *see* Trustee Ltr. Ex. A (Log), on the ground that the Log does not provide information sufficient to allow the Trustee to assess the TAM Parties' claims of privilege, as required by Fed R. Civ. P. 26(b)(5)(A). In the alternative, the Trustee requests that the TAM Parties be ordered to "produce a log of the withheld documents' metadata." Trustee Ltr. at 4.

In their opposition letter-brief, dated July 31, 2020 (TAM Ltr.) (Dkt. No. 316), the TAM Parties point out that the parties' Stipulated Discovery Order (Dkt. No. 272) expressly allows for a categorical privilege log, and argue that the Log is not otherwise deficient. The TAM Parties resist the request for alternative relief in the form of a metadata log on the ground that the Trustee never asked for that relief during the parties' meet-and-confer, and contend that preparing such a

log would be unduly burdensome because it would require a document-by-document metadata view to make sure that the metadata did not itself reveal privileged information. TAM Ltr, at 4.

In its reply letter, dated August 4, 2020 (Trustee Reply Ltr.) (Dkt. No. 317), U.S. Bank reiterates that the Log provides insufficient detail to evaluate the claimed privileges. The reply letter does not further discuss the alternative request for a metadata log.

No conference is required. For the reasons discussed below, the letter-motion will be granted in part, as follows.

### The Log

The TAM Parties' Log covers more than 12,500 withheld documents, divided into 21 categories. For each category, the Log includes columns headed "Category Description," "Subject(s) of Documents or Communications," "Applicable Privileges or Immunities from Discovery," "Number of Documents Withheld," and "Number of Documents Redacted." There is no column for dates, because the "date range" for each category is the same: an eight-year period from March 28, 2011 to September 4, 2019. Log at 1. However, it is extremely unlikely that the documents in each of the 21 categories span the entire eight years, because several of the categories include only a handful of documents, and Categories 19 and 20 each identify a single withheld document. Other categories are extremely large. Category 7, for example, covers 3,390 withheld documents and 37 redacted documents.[1]

*Category Descriptions*. The "category descriptions" do not vary much between one category and the next. For example, Category 3 (which covers 1,059 withheld documents) is described as follows:

---

[1] The Trustee's letter-application focuses on the withheld documents. The Court presumes that, as to the redacted documents, the Trustee has adequate information to evaluate the claim of privilege.

Communications between **Kobre & Kim** (including Steven Perlstein*, Darryl Stein*, Phil Huynh*, Josef Klazen*, Darryl Stein*, Sean Casey*, Michael S. Kim*, Simon Cullingworth*, Gregory Lewis*, Carrie Tendler*, Jef Klazen*, Adriana Riviere-Badell*), on the one hand, and/or **Olshan Frome Wolosky** (including John Moon*, Kerrin Klein*), **Miller & Wrubel** (including John Moon*, Kerrin Klein*, Charles Jacob* Kelsey Rowe*, Michael Ardeljan*, Jack Millman*, Sandra Reeves), **Talcott Franklin P.C**. (including Talcott Franklin*), **Triaxx Asset Management LLC** (including Nicholas Calamari*, Randy Tokar, Tom Priore), **ICP Capital** (including Tom Priore, Barbara-Ann Wislosky), **Phoenix Real Estate Solutions Ltd**. (including Vishal Garg, Nicholas Calamari*, Mingsung Tang, Ziggy Jonsson, Dom Savino, Joe Russo, Arun Mittal), on the other hand, or communications among such entities or documents that reflect a request for or receipt of legal advice from such counsel and/or communications or documents prepared in anticipation of litigation or for trial.

Log at 3 (emphasis in the original). The bolded names are the names of law firms and other entities; the asterisks indicate that the named individual is a lawyer. There are no columns (as there typically are in a document-by-document log) for the senders, addressees, or recipients of the withheld documents. The Trustee asserts, and the TAM Parties do not deny, that the "category descriptions" include "a *non-exclusive* laundry list of recipients from numerous entities," Trustee Ltr. at 3 (emphasis in the original), meaning that some of the documents within Category 3, for example, may have been sent by or to individuals other than those listed in the description.

The descriptions of Categories 1-2, 4-9, 11-15, 17, 20, and 21 all follow the same format, except that they include different firms or combinations of firms. For example, where Category 3 includes four law firms, TAM, Phoenix, and ICP Capital, Category 8 includes only one law firm (Kramer Levin Naftalis & Frankel), Phoenix, and ICP Capital. Log at 8.

*Subject(s) of Documents or Communications*.  For most of the categories, the "subject" of the withheld material is described identically, as follows:  "Activist litigations brought on behalf of Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2, Ltd., Triaxx Prime CDO 2007-1, Ltd., and related strategies." The reference to "activist litigations" is to lawsuits brought on behalf of the CDOs by TAM, with the assistance of Phoenix, against various nonparties. The conduct of

3

those lawsuits is not directly in issue in this action. However, the manner in which Phoenix was retained to assist with those lawsuits, and the way in which it has been paid for its services, are central to the current litigation.

*Applicable Privileges or Immunities from Discovery.* For most of the categories, the "applicable privileges" are listed identically as: "Attorney-client privilege; work product doctrine; common interest doctrine." There is no attempt to indicate which privilege applies to which documents within any category.

Categories 4, 10, 16, and 18 are slightly different from the rest. The "subject" of the 338 documents covered by Category 4 includes – in addition to the activist litigations – "prior interpleader actions brought by U.S. Bank, N.A."

The description of Category 10 (which covers 968 withheld documents) does not include any law firms. All of the withheld documents are among and between TAM, Phoenix, and two other business entities, at least one of which (1/0 Capital) is another affiliate of the TAM Parties. The only lawyer involved in the Category 10 communications is Nicholas Calamari, who (as the TAM Parties acknowledge, *see* TAM Ltr. at 3), acts in both a legal and a business capacity for both TAM and Phoenix. Moreover, the subject of the Category 10 communications includes – in addition to the activist litigations – "Engagement of Phoenix Real Estate Solutions, Ltd.; Phoenix Real Estate Solutions, Ltd.'s work on behalf of Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2, Ltd., Triaxx Prime CDO 2007-1, Ltd.; and matters relating to the pending action." Log at 9. As noted above, these subjects are central to the dispute underlying the present action. Moreover, since Phoenix was engaged in 2011, and this action was filed seven years later, in 2018, it seems likely that Category 10 contains many documents that do *not* "relat[e] to the pending

action" (except in the sense that they are relevant to the issues in the pending action) and were *not* prepared in anticipation of it.

Category 16 (which covers 53 withheld documents) also appears to include intramural communications only; that is, the description of the category is limited to communications among and between the TAM Parties and other business entities, some of which may be affiliates, with no lawyer involved apart from Calamari. The subject of all of the communications is the activist litigations.

Category 18 does not include any communications at all. Rather it covers 4,723 "[d]ocuments prepared by or for" TAM, ICP Capital, and/or Phoenix, all of which, according to the Log, are protected by the work product doctrine, *id*. at 13, meaning that they must have been prepared for or in anticipation of the activist litigations. No outside lawyer is listed in connection with Category 18.

## <u>Analysis</u>

Where, as here, documents are withheld on the basis of privilege, Fed R. Civ. P. 26(b)(5)(A) requires the withholding party to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected . . . enable[s] other parties to assess the claim." The privilege log must "establish the essential elements of the privilege," and "provid[e] sufficient detail to permit a judgment as to whether the document[s] [are] at least potentially protected from disclosure." *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). To that end, Local Civ. R. 26.2(a)(2)(A) ordinarily requires that the privilege log identify, for each document withheld, the type of document, its general subject matter, date, author, addressees, and any other recipients, and, where not otherwise apparent, the relationship of the author, addresses, and recipients to each other.

The subject matter descriptor is ordinarily required to be fairly specific. Thus, for example, in *In re Int. Rate Swaps Antitrust Litig.*, 2018 WL 4179450 (S.D.N.Y. Aug. 23, 2018), Judge Engelmayer ruled that "Email reflecting request for legal advice from Barclays' outside counsel (Linklaters LLP) regarding CFTC ownership regulation" was an acceptable descriptor with respect to a single withheld email, but "Email requesting legal advice regarding draft talking points" required "additional context," which could be supplied by adding a clause such as "for ISDA/FIA meeting." *Id*. at *2-3.

Local Civ. R. 26.2(c) permits the parties to agree (as they have here, *see* Stip. Disc. Ord. ¶ 25) to exchange categorical privilege logs, which group like documents into categories, instead of listing each document individually. However, the party receiving a categorical log "may object if the substantive information required by this rule has not been provided in a comprehensible form." Local Civ. R. 26.2(c). The use of a categorical log does not obviate a party's "obligation to provide 'sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'" *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 325 (S.D.N.Y. 2020) (quoting *Constr. Prods. Research*, 73 F.3d at 473).

Here, as in *Aenergy*, the Log's descriptions "are vague and repetitive," and the Court can discern little "rhyme or reason behind its chosen groupings," 451 F. Supp. 3d at 326, almost all of which relate to the same broad "subject," namely, the activist litigations, range over the same eight-year time period, and involve most of the same TAM Party personnel. The only "rhyme or reason" apparent from the face of the Log is that each category represents a slightly different grouping of parties and non-parties. While perhaps useful as an organizing principle for the drafter of the Log,

6

these categories do little or nothing to assist the reader in determining whether the underlying documents are or are not privileged.[2]

The categorical privilege log at issue in *Aenergy*, which was prepared by GE, suffered from similar deficiencies, in that the "vast majority" of the category descriptions stated in generic terms that the withheld documents were "confidential internal documents between GE employees and in-house counsel 'seeking or conveying legal advice'" about one or more of three broad subjects: "the 'on-sale contracts,' the 'Credit Facility Agreement," or the 'AE-GE contracts.'" 451 F. Supp. 3d at 326. Judge Caproni concluded that the privilege log did "little to communicate the potential basis for [the] privilege assessments" and consequently ordered GE to re-review the withheld documents and produce a revised, document-by-document privilege log listing each of the 1300 withheld documents individually. *Id*. at 328 ("Although AE has not requested a document-by-document list, the Court has lost confidence that GE will provide sufficient information regarding withheld documents to inform AE of the basis for its privilege calls."). *See also Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 42374, at *2-3 (S.D.N.Y. Jan. 3, 2013) (finding that Phoenix Life "forfeited any claim of privilege or work product protection where its categorical privilege log was "both

---

[2] The problem is particularly acute with respect to the categories which do not include any communications without outside lawyers. As to these categories, the claim of privilege, with respect to each withheld communication, may depend on which hat Nicholas Calamari was wearing when he received or sent the communication. The TAM Parties state that they properly evaluated this issue and determined whether Calamari was acting in a business or a legal capacity when determining whether privilege applies, TAM Ltr. at 3, and fault U.S. Bank for "not identify[ing] any category of documents that it believes were improperly withheld on that basis." *Id*. As presented, however, the Log essentially demands that the Trustee accept the TAM Parties' representation – that *they* properly reviewed Calamari's communications and made the right call on each – without giving the Trustee any intelligible basis (such as the specific date of the communication, the persons with whom Calamari communicated, or a non-generic description of the subject to the communication) on which even to consider whether to challenge the designation.

tardy and inadequate," listing only four "broad classes of documents" with "exceedingly general and unhelpful" descriptors).

That said, proportionality is an issue in evaluating privilege logs, just as it is with respect to other aspects of discovery. *See Aenergy*, 451 F. Supp. 3d at 328 (explaining that the court might not have required a document-by-document log "were the task particularly burdensome," but "in this case GE has withheld only 1300 documents and 800 document families"). As noted above, the conduct of the activist litigations is not directly at issue in this action. Therefore, as to the 17 categories on the Log which include communications with outside counsel, and as to which the subject of all of the withheld documents is the activist litigations, the Court will require only two modifications to the Log. The TAM Parties must (1) provide an accurate date range *for that category*; and (2) to the extent they have not already done so, include a *complete* list of the senders, addressees, and other recipients of the communications within the category.

As to Category 18 (which covers 4,723 documents, all of which are described as work product, rather than communications, concerning the activist litigations) the TAM Parties must (1) provide an accurate date range *for that category*; and (2) to the extent they have not already done so, include a *complete* list of the individuals "by" and "for" whom the withheld documents were prepared.

As to Categories 4, 10, and 16 (comprising a total of 1,359 withheld documents), the TAM Parties must produce a traditional, document-by document privilege log. Alternatively, if the parties so stipulate, the TAM Parties may produce a metadata log as to these categories.

The TAM Parties' revised log shall be served no later than **April 28, 2021**.

**<u>Conclusion</u>**

The Trustee's letter-motion is GRANTED IN PART, as set forth above. The Clerk of Court

is respectfully directed to close the motion at Dkt. No. 315.

Dated:  New York, New York
        March 31, 2021                 **SO ORDERED.**

                                        _____

                                        **BARBARA MOSES**
                                        **United States Magistrate Judge**