UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



U.S. BANK NATIONAL ASSOCIATION,

Plaintiff,

-against-

TRIAXX ASSET MANAGEMENT LLC, et al.,

Defendants.

18-CV-4044 (BCM)

**ORDER RE TAM PARTIES' LETTER-MOTION TO COMPEL**

**BARBARA MOSES, United States Magistrate Judge**.

By letter-motion dated June 22, 2021 (TAM Ltr.) (Dkt. No. 355), defendants Triaxx Asset Management LLC (TAM) and Phoenix Real Estate Solutions, Ltd. (Phoenix) (collectively the TAM Parties) seek an order compelling discovery from defendant Pacific Investment Management Company, LLC (PIMCO) and plaintiff U.S. Bank. N.A. (U.S. Bank or the Trustee). PIMCO filed a responding letter, opposing the requested relief, on July 6, 2021 (PIMCO Ltr.) (Dkt. No. 363), as did U.S. Bank (Trustee Ltr.) (Dkt. No. 362). No conference is required. The TAM Parties' letter-motion will be granted in part and denied in part as follows:

1. <u>PIMCO Trade Tickets and Memoranda</u>. The TAM Parties seek trade tickets, memoranda, and related documents concerning PIMCO's purchases and sales of the Notes issued by Triaxx Prime CDO 2006-2 and Triaxx Prime CDO 2007-1. TAM Ltr. at 1. The TAM Parties contend that these documents are relevant to whether the funds that were paid to Phoenix (either as administrative expenses, through the CDOs' Waterfall, or directly from the CDOs' Collateral outside of the Waterfall)[1] would otherwise have been available to pay Noteholders such as PIMCO, because they will show (i) how much PIMCO has received from the CDOs, (ii) whether

---

[1] All capitalized terms used in this Order, to the extent not defined herein, are used as defined in this Court's Opinion and Order dated March 31, 2021 (Dkt. No. 331).

those payments have been affected by any payments to Phoenix, and (iii) how PIMCO has benefitted from Phoenix's work. *Id*. at 2. PIMCO responds that it has already produced a spreadsheet listing the date and amount of each of its purchases and sales of the Notes, as an interrogatory response, and that the trade tickets and related documents now sought will not further bear on any of the three questions raised by the TAM Parties. PIMCO Ltr. at 1-3. PIMCO is correct. While the TAM Parties are entitled to know what Notes PIMCO bought and sold, and when, the detailed trading information now sought would not add to the TAM Parties' knowledge concerning "how much PIMCO has received from the CDOs." Nor could PIMCO's trading records shed any light on whether the proceeds of its investments were decreased by the Phoenix payments or increased as a result of Phoenix's work. PIMCO need not produce the requested trading records.

2. <u>Additional Trustee Custodian and Search Term</u>. The TAM Parties contend that the Trustee should collect and produce documents from an additional custodian, Thomas Collins, who served as "the CDO Analyst for the Triaxx CDOs," as well as documents hit on by an additional search term, "Phoenix." TAM Ltr. at 1-3. As to Collins, U.S. Bank resists, arguing that the work would be unduly burdensome and the results duplicative because Collins was a "junior CDO Analyst" with "limited exposure to the Triaxx CDOs." Trustee Ltr. at 1. It further notes that it has already produced documents from a more senior analyst, Kenneth Sliwa, who performed "the majority of the work for the Triaxx CDOs." *Id*. It is true that Sliwa's name, as well as Collins's, appears on each of the three emails that the TAM Parties submit to demonstrate that Collins was involved with the Triaxx CDOs. *See* TAM Ltr. at Exs. B-D. It does not follow, however, that a search of Collins's account would not produce additional, non-duplicative documents. Moreover, U.S. Bank provides no support for its conclusory assertion that searching Collins's account would entail "significant expense." Trustee Ltr. at 2. Consequently, the Trustee must collect and produce

2

documents from Collins. There is no evidence, however, that Collins worked on the Triaxx CDOs before February 2015 or after December 2015. *See* TAM Ltr. at 2; Trustee Ltr. at 2. The search may therefore be limited to calendar year 2015.

The Trustee has already searched for the names of the various Phoenix Entities relevant to this action, such as "Phoenix Real Estate Solutions" and "ARAM Phoenix." TAM Ltr. at 2. In the TAM Parties' view, the term "Phoenix," standing alone, "is obviously likely to generate relevant documents," particularly since U.S. Bank employees frequently referred to the Phoenix Entities simply as "Phoenix." *Id*. at 2-3. The Trustee counters that "Phoenix" is "a common term" which, standing alone, produces 13,000 "hits," 63% of which are "unique hits," meaning that "they hit upon the term 'Phoenix' and no other term related to the Triaxx CDOs." Trustee Ltr. at 2. Efforts to narrow the review (such as excluding documents that contain the word "Arizona" in close proximity to the word "Phoenix") did not "substantially reduce[] the number of documents to be searched." *Id*. at 3. The Court is sympathetic to the Trustee's position. Before concluding that the search is disproportionate to the substantial stakes in this action, however, the Trustee shall review a sample consisting of 100 unique hits. If none of those documents proves relevant to this action, the Trustee need not review the remainder of the unique "Phoenix" hits for relevance.

3. <u>Agreements and Drafts between PIMCO and the Trustee</u>. The TAM Parties seek agreements (such as tolling agreements) between or among the Trustee and the Noteholders (PIMCO and Goldman), as well as communications between or among their counsel (including draft filings), concerning "this Action or the CDOs." TAM Ltr. at 3. The TAM Parties explain that these documents are relevant to test the truth of the Trustee's claim that it properly brought this action as an interpleader, in genuine fear of double or multiple liability, rather than "by collusion" with the Noteholders. *Id*. The Trustee responds that there are no tolling agreements between it and

3

the Noteholders, nor any "other agreements limiting any noteholders' ability to bring suit against the Trustee for the interplead disputes." Trustee Ltr. at 3. The Trustee does not deny that draft filings were shared between counsel for the Trustee and counsel for the Noteholders, but argues that the drafts are protected from discovery by the work product doctrine and the common interest privilege. *Id*. at 3-4. The Trustee notes that in addition to its interpleader claims, it brought direct claims against TAM and Phoenix "for the benefit of the Noteholders," as to which the Trustee and the Noteholders share a common interest and have cooperated. *Id*. at 4.[2]

The Trustee has the better end of this dispute. While pre-filing agreements between the Trustee and the Noteholders limiting the Trustees' exposure to suit from the Noteholders (including but not limited to tolling agreements[3]) could be relevant to the propriety of the interpleader, the Trustee represents that there are no such agreements. The Court cannot compel the production of documents that do not exist. The Trustee concedes that there has been cooperation between its counsel and the Noteholders' counsel with respect to the Trustee's direct claims, brought for the Noteholders' benefit. If the fact of that cooperation is evidence of improper collusion, the TAM Parties may make such use of it as they deem appropriate (and may, if they wish, seek confirmation of the cooperation at deposition). The actual drafts shared among counsel, however, are presumptively privileged. Moreover, the TAM Parties fail to explain why the content of such shared drafts (as opposed to the fact of their existence) could prove or disprove the Trustee's "allegation that it is not colluding with the Noteholders." TAM Ltr. at 4. Consequently, the Trustee

---

[2] PIMCO did not separately respond to this portion of the TAM Parties' letter-motion.

[3] The Trustee argues that a tolling agreement, if one existed, would actually "increase the Trustee's potential exposure" by expanding the time period within which suit could be brought. Trustee Ltr. at 3. The Court disagrees, having never met a tolling agreement that did not also include (either expressly or impliedly) some protection against suit in the near term. If there are no such agreements between the Trustee and the Noteholders, however, the question is academic.

(and PIMCO) need not now produce any shared drafts as to which they claim privilege. It appears, however, that they must be logged. *See* Stip. Disc. Order (Dkt. No. 272) ¶ 23 (exempting, from the parties' privilege logs, "privileged documents constituting communications between any Party and outside litigation counsel for that Party," but making no mention of communications between counsel for two different Parties).

For these reasons, the TAM Parties' letter-motion is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to close Dkt. No. 355.

Dated: New York, New York
July 16, 2021

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**