UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION,

Plaintiff,

-against-

TRIAXX ASSET MANAGEMENT LLC, et al.,

Defendants.



18-CV-4044 (BCM)

**ORDER RE TRUSTEE'S LETTER-MOTION TO COMPEL**

**BARBARA MOSES, United States Magistrate Judge**.

By letter-motion dated June 22, 2021 (Trustee Ltr.) (Dkt. No. 356), Plaintiff U.S. Bank National Association (U.S. Bank or the Trustee) seeks an order compelling discovery from defendants Triaxx Asset Management LLC (TAM) and Phoenix Real Estate Solutions Ltd. (Phoenix) (collectively the TAM Parties). The TAM Parties filed a responding letter, opposing the requested relief, on July 6, 2021 (TAM Ltr.) (Dkt. No. 360). No conference is required. The Trustee's motion will be granted in part and denied in part as follows:

1. <u>Additional Custodians</u>. The Trustee contends that the TAM Parties should collect and produce documents from three additional custodians: Dom Savino, an employee of Phoenix ABS and a partner at 1/0 Capital, who according to the Trustee has knowledge of what it calls, imprecisely, "TAM's purchase of ICP Asset Management (TAM's predecessor)," Trustee Ltr. at 2; Raja Visweswaren, a Phoenix Director and founder of certain Phoenix affiliates, who is listed as an "individual to be noticed" in the 2011 Phoenix Engagement Letters and therefore, according to U.S. Bank, "should have knowledge" of them, *id*.; and Raza Khan, who along with Garg is identified in those Engagement Letters as a "Key Man" whose departure could trigger the

termination of the engagement. *Id*.[1] All three names appear in the TAM Parties' privilege log, with Savino's appearing the most frequently. *Id*. The TAM Parties resist, noting that they have already searched the email accounts of five custodians, from which they produced nearly 12,000 documents, and arguing that the additional searches now requested would be disproportional to the stakes in this action because Savino "communicated almost exclusively with the other custodians" and "performed minimal work relating to the Triaxx CDOs"; Visweswaran had a "high-level administrative role" but was "never involved in Phoenix's work for the Triaxx CDOs"; and Khan, who "has not been an officer of Phoenix since 2013," performed "no work relating to the Triaxx CDOs." TAM Ltr. at 2.[2] The TAM Parties conclude that they should not be required to review "many more thousands of documents that are unlikely to yield relevant information," *id*., but do not provide any additional detail about either the time or the cost of performing the additional searches. On balance, the Court concludes that the Trustee has made an adequate case for including Savino and Khan as custodians. However, it has not shown that Visweswaran is likely to have any significant substantive knowledge concerning the parties' claims and defenses. Consequently, the TAM Parties must collect and produce documents from Savino and Khan, but not Visweswaran.

2. <u>Personal Email Accounts</u>. The Trustee notes that some of the TAM Parties' custodians, including Garg and Calamari, used their personal gmail.com or yahoo.com email addresses to conduct TAM or Phoenix business, and requests that this Court order the TAM Parties

---

[1] All capitalized terms used in this Order, to the extent not defined herein, are used as defined in this Court's Opinion and Order dated March 31, 2021 (Dkt. No. 331).

[2] The TAM Parties do not explain why, if Khan did no work for the Triaxx CDOs, he was designated a key man in the Engagement Letters under which Phoenix was retained to perform work for the Triaxx CDOs. This alone suggests that Khan's account may contain information relevant to the claims and defenses in this action.

to search those personal accounts. Trustee Ltr. at 2-3. The TAM Parties do not question that such a search could be compelled,[3] but argue that there is no need for it in this case, as all of their custodians had and used one or more business email accounts and that, while business communications may occasionally have been sent to or from a personal email address, those instances were rare and, "in the examples identified by the Trustee, those communications also were sent to other email accounts that the TAM Parties have already searched." TAM Ltr. at 3. The Court's review of the examples cited by the Trustee in the TAM Parties' privilege log confirms that their custodians did not make a practice of using personal email addresses for Triaxx-related communications. On this record, the additional searches proposed by the Trustee would be both overly intrusive and unlikely to produce significant new information relevant to the claims and defenses in this action. The TAM Parties need not routinely search their custodians' personal email accounts. Nothing in this Order precludes the Trustee from requesting production of a particular email or email string sent to or from a personal account if it has a good faith basis for believing that such an email exists and is relevant to the claims and defenses in this action.

3. <u>Inconsistent Application of Search Terms</u>. The Trustee complains that the TAM Parties did not search *all* of their custodians' business email accounts using *all* of the approximately 60 search terms and strings requested by the Trustee or negotiated among the parties. For example, four of those custodians had onezerocapital.com accounts, associated with Phoenix affiliate 1/0 Capital, which were only searched for a single term: "Triaxx." Trustee Ltr. at 3, App. The TAM Parties respond that since 1/0 Capital is not a party to this action and is in a "completely different business" from TAM or Phoenix, "Triaxx" should be sufficient to capture any relevant emails

---

[3] *See*, *e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171 (S.D.N.Y. Sept. 27, 2016).

inadvertently sent to or from those accounts. TAM Ltr. at 3-4. The TAM Parties also explain that certain terms were excluded from the search of certain accounts when they "generated numerous false positives," such as the term "Edison," which was excluded from the search of Jonsson's and Tokar's accounts because it "hit[] on energy bills," *id*., and point out, correctly, that the Trustee has not, for the most part, "explained why [the contested] terms are necessary." *Id*. at 4. Having reviewed the parties' arguments, as well as the Trustee's spreadsheet showing which terms were used to search which accounts, the Court agrees with the Trustee that the onezerocapital.com accounts should be searched for the six common misspellings of "Triaxx" used to search other accounts, and that Garg's triaxxholdco.com account should be searched for "ARAM," "aramphoenix.com," "Phoenix," and "phonixabs.com." The Court is not persuaded as to the need for the additional searches proposed by the Trustee.

4. <u>Computers and Cloud Servers</u>. The Trustee asserts that TAM has not searched any shared drives, hard drives, or cloud servers. Trustee Ltr. at 4.[4] TAM concedes this fact, explaining that it "does not have shared drives" and that its "sole active employee" during the relevant time period was Calamari, who performed all of his work "over email." TAM Ltr. at 4. Although Calamari did save documents to (and edit them in) the "Downloads" folder of his "work computer," TAM has apparently not searched that folder – or any other location in Calamari's work computer – because everything in it was either sent to him or sent by him over email, making "discovery from that folder . . . duplicative." *Id*. TAM does not address whether it has – or Calamari used, for business purposes – any cloud servers, cloud-based storage programs (like Dropbox) or collaborative software programs (like Google Docs).

---

[4] The Court understands this complaint to be limited to TAM. The Trustee does not contend that Phoenix neglected to search appropriate servers, computer hard drives, and/or cloud servers.

4

It is possible that TAM's representations as to Calamari's work habits are entirely accurate, and thus that a search of his work computer would yield no non-duplicative documents. Given the substantial financial stakes in this action, however, the fact that Calamari was, according to TAM, its only "active employee" during the relevant period,[5] and the fact that – at least occasionally – Calamari used a personal address to conduct Triaxx-related business, the Court is of the view that it would be a mistake for the TAM Parties to forgo any search whatsoever of that computer, which appears to be the *only* potential location (other than his email account) in which his relevant TAM documents might be found. The TAM Parties must therefore search Calamari's work computer. Additionally, if it is their contention that TAM did not have – and that neither Calamari nor other TAM personnel used, for business purposes – any other computers, servers, cloud servers, cloud-based storage programs or collaborative software programs, the TAM Parties must provide the Trustee with a written representation to that effect.

For these reasons, the Trustee's letter-motion is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to close Dkt. No. 356.

Dated: New York, New York
July 16, 2021

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[5] Calamari was not the only TAM-affiliated individual with a triaxxholdco.com email account during that period. Garg also had such an account. The TAM Parties make no representations regarding Garg's work habits or where (besides his triaxxholdco.com email account) Garg's TAM documents might reside.