USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/16/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION,

    Plaintiff,

-against-

TRIAXX ASSET MANAGEMENT LLC, et al.,

    Defendants.

18-CV-4044 (BCM)

**ORDER RE PIMCO'S LETTER-MOTION TO COMPEL**

**BARBARA MOSES, United States Magistrate Judge**.

    By letter-motion dated June 22, 2021 (PIMCO Ltr.) (Dkt. No. 357), defendant Pacific Investment Management Company, LLC (PIMCO) seeks an order compelling discovery from defendants Triaxx Asset Management LLC (TAM) and Phoenix Real Estate Solutions Ltd. (Phoenix) (collectively the TAM Parties). Plaintiff U.S. Bank National Association (U.S. Bank or the Trustee) joins in PIMCO's motion regarding the first two issues addressed below. (Dkt. No. 356.) The TAM Parties filed a responding letter, opposing the requested relief, on July 6, 2021 (TAM Ltr.) (Dkt. No. 361). No conference is required. PIMCO's motion will be granted in part and denied in part as follows:

    1.    <u>"Documents from Each Producing Party.</u>" PIMCO complains that the TAM Parties produced documents jointly, making "no distinction whatsoever as to which entity – TAM or Phoenix – produced which documents." PIMCO Ltr. at 2. According to PIMCO, the joint production violates Fed. R. Civ. P. 34(b)(2)(E)(i), requiring parties to produce documents either labelled to correspond to the categories in the request (which the TAM Parties did not do) or "as they are kept in the usual course of business." *Id*. PIMCO makes no showing, however, that TAM and Phoenix (which are affiliates and share personnel) kept their documents separate "in the usual course of business." For example, the TAM Parties admit that documents produced from their

servers were all "stored on Phoenix's servers" because TAM "has no servers" of its own. TAM Ltr. at 2. As for documents collected from the TAM Parties' email accounts, the metadata for each email – already produced to PIMCO – includes, among other things, the custodian and "the email account from which [the] email was produced." *Id*. Each email account was associated with a specific entity; for example, "@triaxxholdco.com" denotes a TAM account. *Id*. As to hard copy documents, the TAM Parties have offered to review them and "to the extent possible, advise whether a particular entity can be said to have produced that document." *Id.* The Court is not convinced that anything further is required. Consequently, PIMCO shall promptly identify each hard-copy document produced by the TAM Parties as to which PIMCO wishes clarification as to source, and the TAM Parties shall promptly advise, to the extent possible, which entity possessed and produced that document.

2. <u>Documents and Communications Related to Code of Ethics</u>. Pursuant to an oral ruling of this Court on October 3, 2019 (Dkt. No. 288 at 62:18-19), TAM produced several versions of its Code of Ethics (Code), including a version with "an effective date of April 2015," PIMCO Ltr. at 3, which, according to TAM, was actually "dated March 3, 2015." TAM Ltr. at 3 n.2. PIMCO now seeks earlier versions of the Code – which TAM says do not exist – and "documents and communications relating to" the Code, including communications concerning the "existence, terms and application" of any code of ethics predating the March/April 2015 version (back to March 2011, when Phoenix was engaged to perform work for the Triaxx CDOs)[1] and communications (from March 2011 forward) concerning various procedures, analyses, and evaluations mandated by the Code to address TAM's potential conflicts of interest. *Id*. at 3-4;

---

[1] All capitalized terms used in this Order, to the extent not defined herein, are used as defined in this Court's Opinion and Order dated March 31, 2021 (Dkt. No. 331).

PIMCO Ltr. at 3. The TAM Parties respond that this Court effectively denied PIMCO's request on October 3, 2019, by ordering production of the Code alone, and that, in any event, Code-related communications are irrelevant to the parties' claims and defenses. TAM Ltr. at 3.

The Court disagrees. PIMCO alleges, among other things, that TAM's dealings with Phoenix violated the CMAs governing the Triaxx CDOs, which required TAM, as the Collateral Manager, to avoid "any action that would constitute gross negligence, bad faith, or harm the interest of the Noteholders," and to "exercise reasonable care" in performing its duties, "using a degree of skill and attention no less than that which the Collateral Manager exercises with respect to comparable assets that it manages for itself." PIMCO Ans. (Dkt. No. 212) ¶¶ 144-47. PIMCO further alleges that by entering into the Engagement Agreements and Clarification Letters, submitting the Phoenix Invoices, and failing to immediately deliver the Recoveries, TAM "improperly enriched its own owners from CDO Collateral" to the detriment of the Noteholders. *Id.* ¶ 148-51. In addition, the Trustee has asserted direct claims, for the benefit of the Noteholders, against TAM for breach of the CMAs, and against Phoenix for unjust enrichment and money had and received. TAC (Dkt. No. 203) ¶¶ 98-107, 121-32. Whether and to what extent TAM actually complied with its Code is relevant to these claims.

Consequently, TAM shall produce all non-privileged communications and other documents, from March 2011 through April 2015, concerning whether it had, was developing, or was contemplating the development of a code of ethics. In addition, it shall produce all non-privileged communications and other documents, from March 2011 through the date on which this action was filed, concerning: (a) any analysis that it performed "relative to the competitiveness of the fees charged by the [Phoenix Entities] based on all relevant factors," (b) its preparation and retention of "proper documentation and support relative to the advisability and propriety of such

3

arrangement," as well as all "documentation and support" that it retained, and (c) its "evaluat[ion] [of] the services performed by [the Phoenix Entities] to determine whether such affiliates are meeting their respective contractual obligations and providing adequate services to [TAM's] clients." PIMCO Ltr. at 3.

3. <u>Documents Reflecting the Transfer of Funds Used to Purchase TAM</u>. PIMCO seeks production of documents and communications showing how Triaxx Holdco (owned by Garg and Calamari) funded its purchase of the Collateral Manager from companies controlled by Priore, and, in particular, whether the money came from Phoenix or 1/0 Capital, in which Garg and/or Calamari also had interests. If it did, PIMCO argues, that would "confirm the close relationship between TAM and Phoenix" and tend to show that "TAM's current owners purchased it expressly to move more business to Phoenix, which is an affiliate of TAM, or to benefit 1/0 Capital." PIMCO Ltr. at 4. The TAM Parties resist, calling the request a "fishing expedition" and arguing that the motivations of Garg and Calamari in purchasing the Collateral Manager are not relevant to any claim or defense in this action. TAM Ltr. at 4.

PIMCO's expectation as to what the requested discovery would show does not strike the Court as unduly speculative. Unless one of them won the lottery prior to purchasing the Collateral Manager, Calamari and Garg likely drew on their existing assets (including Phoenix and 1/0 Capital) to fund the purchase. The Court is not convinced, however, that this fact (should it be established) would shed any additional light on their "motivations" in entering into the deal. Nor is it clear to the Court why their "motivations" are relevant to PIMCO's claims, which, as noted above, focus on what TAM actually did and whether that conduct "improperly enriched its own owners from CDO Collateral" to the detriment of the Noteholders. Consequently, TAM need not

produce documents reflecting the source of the funds that Garg and Calamari used to purchase the Collateral Manager from Priore.

For these reasons, PIMCO's letter-motion is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to close Dkt. No. 357.

Dated: New York, New York
July 16, 2021

**SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**