UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/26/21
```

U.S. BANK NATIONAL ASSOCIATION,

                    Plaintiff,

          -against-

TRIAXX ASSET MANAGEMENT LLC,
et al.,
                    Defendants.

18-CV-4044 (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

Now before the Court is a motion (Dkt. No. 346) filed by U.S. Bank National Association (U.S. Bank or the Trustee), in its capacity as Trustee of a collateralized debt obligation (CDO) known as Triaxx Prime CDO 2006-1 (Triaxx 2006-1), to remand to the Supreme Court of the State of New York, New York County (the State Court) a special proceeding (the Second Action) that the Trustee commenced on January 12, 2021 against the CDO's Collateral Manager, Triaxx Asset Management LLC (TAM or the Collateral Manager), TAM's affiliate Phoenix Real Estate Solutions Ltd. (Phoenix) (collectively with TAM, the TAM Parties), and the issuer of Triaxx 2006-1, known as Triaxx Prime CDO 2006-1, Ltd. (the 2006-1 Issuer) (collectively with the TAM Parties, the Respondents), and that the TAM Parties removed to this Court, with the consent of the 2006-1 Issuer, whereupon it was consolidated with the above-captioned action (the Original Action), which the Trustee filed in this Court, against the Respondents and others, on May 4, 2018. For the reasons that follow, the remand motion will be denied.[1]

---

[1] When the TAM Parties removed the Second Action to this Court on January 20, 2021, it was initially docketed as Case No. 21-CV-439. *See* Not. of Removal (Dkt. No. 9 in Case No. 21-CV-439.) On February 23, 2021, the Hon. Victor Marrero, to whom the Second Action was initially assigned, consolidated it with the Original Action, which was before me on the consent of all parties, and directed that "all filings in connection with the consolidated action be docketed against the lower numbered case." (Dkt. No. 329.) Thereafter, the parties to the Second Action consented to my jurisdiction as well. (Dkt. No. 21 in Case No. 21-CV-439.) In this Memorandum and Order,

**Background**

U.S. Bank is the Trustee and Collateral Administrator, and TAM is the Collateral Manager, of Triaxx Prime 2006-1 and two other CDOs (collectively, the Triaxx CDOs), governed by substantially identical Indentures and related contracts. *See* Third Amended Interpleader Complaint (TAC) (Dkt. No. 203) ¶ 2.[2] For a number of years, under the direction of TAM, U.S. Bank periodically paid, out of the Triaxx CDOs' accounts, certain invoices (the Phoenix Invoices), reflecting fees charged by Phoenix for its services in connection with what the Collateral Manager terms its "activist litigation strategy." TAM Ans. (Dkt. No. 211) ¶¶ 160-62. The fees were paid as Administrative Expenses, subject to the priority of payments Waterfall set out in the Indentures. TAC ¶¶ 1, 3, 6, 48-51. In May and June of 2018, certain Noteholders wrote to the Trustee to object to the payment of $18.25 million in new Phoenix Invoices (across all three Triaxx CDOs), taking the position that TAM should pay Phoenix out of its own funds. *Id*. ¶¶ 3, 50-58. One of the objectors was Goldman Sachs & Co. (Goldman), which at that time held Senior Notes issued under the Triaxx 2006-1 Indenture. *Id*. ¶¶ 3, 21, 58. Another was Pacific Investment Management Company LLC (PIMCO), which held Senior Notes in the other two Triaxx CDOs. *Id*. ¶¶ 3, 20, 52.

U.S. Bank commenced the Original Action by filing an interpleader complaint asserting that it faced competing demands from the Noteholders, on the one hand, and TAM, on the other hand, as to whether to pay the Phoenix Invoices. Compl. (Dkt. No. 1) ¶¶ 1, 3-4, 32. In connection with that dispute, the Trustee "retained" (that is, did not pay) the portion of the Phoenix Invoices

---

references to "Dkt. No. __," without further identification, are to the docket in Case No. 18-CV-4044.

[2] All capitalized terms not defined herein have the meaning ascribed to them in *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 1227052 (S.D.N.Y. Mar. 31, 2021), which set out the factual background and procedural history of this case in detail and resolved a series of motions brought pursuant to Fed. R. Civ. P. 12(c). Familiarity with that decision is assumed.

that would otherwise have become "available for payment" as Administrative Expenses in May 2018. *Id*. ¶ 4 n.2.[3]

Thereafter, the dispute expanded. *See* TAC ¶¶ 5-11; *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt.*, 2021 WL 1227052, at *1-2. In the TAC, the Trustee asserted a three-part interpleader claim: (a) as to the Phoenix Invoices, which the Trustee continued to retain (that is, declined to pay) pending the outcome of the case; (b) as to the legal fees incurred by the TAM Parties and by the Issuers of all three Triaxx CDOs in connection with this action (the Interpleader Legal Fees), which, to the extent presented for indemnification, the Trustee also retained (that is, declined to pay); and (c) as to a potential future judgment against the TAM Parties or the Issuers in this action (the hypothetical Interpleader Judgment Fees). TAC ¶¶ 48-75. With respect to each of these issues, the Trustee alleged that it faced "irreconcilable demands" because Goldman and PIMCO "instructed" it not to make payments for these purposes from the CDOs' accounts, while TAM, Phoenix, and/or the Issuers "insist[ed]" that the Trustee "release" the funds necessary to pay the Phoenix Invoices, the Interpleader Legal Fees, and any future Interpleader Judgment Fees. *Id*. ¶¶ 55, 66, 77. Additionally, the Trustee asserted a series of direct (non-interpleader) claims against TAM, Phoenix and the Issuers, arising from its discovery (after it filed its initial complaint) that some of Phoenix's fees had been paid outside of the Waterfall entirely, from the Recoveries generated by TAM's activist litigations, without notice to the Trustee. *Id*. ¶¶ 6-7; 76-91.[4]

The TAM Parties filed declaratory judgment counterclaims against the Trustee, and

---

[3] Under the Indentures, Administrative Expenses are subject to a monthly cap. TAC ¶ 36. The cap for Triaxx 2006-1 is approximately $175,000 per month. *Id*.

[4] The Trustee alleged claims for declaratory judgment, breach of contract, breach of the Uniform Commercial Code (UCC), conversion against TAM and the Issuers, and for unjust enrichment and money had and received against Phoenix. TAC ¶¶ 94-131.

crossclaims against the Issuers, alleging among other things that Phoenix is entitled to payment on the Phoenix Invoices (*both* outside of the Waterfall, directly from the Recoveries, *and* through the Waterfall, as Administrative Expenses) and that Phoenix and TAM are entitled to the indemnification of their fees incurred in this action (and any future judgment against them). Phoenix Ans. (Dkt. No. 209) ¶¶ 142-45, 180-209, 217-222; TAM Ans. ¶¶ 153, 207-17. The Noteholders, for their part, filed "affirmative claims to the *res*" seeking, in effect, to forbid the payment of the Phoenix Invoices, the Interpleader Legal Fees, or any future Interpleader Judgment Fees. *See* Goldman Ans. (Dkt. No. 210) at 20-39; PIMCO Ans. (Dkt. No. 212) ¶¶ 94-179.

Once the pleadings were settled, the Trustee, the TAM Parties, the Issuers, and PIMCO filed competing motions pursuant to Rule 12(c). (Dkt. Nos. 227, 230, 232, 234.) On October 16, 2020, while those motions were pending, Goldman dismissed its affirmative claims with prejudice. (Dkt. No. 318.) Since PIMCO (the only remaining Noteholder in the Original Action with affirmative claims) did not hold any Senior Notes in Triaxx 2006-1, the Trustee requested that the Court dismiss its interpleader claim without prejudice "as it relates to" Triaxx 2006-1. Trustee Ltr. dated Jan. 11, 2021 (Dkt. No. 327), at 1. In its letter, submitted with the consent of the TAM Parties and the 2006-1 Issuer, the Trustee explained that the interpleader claim could not proceed as to Triaxx 2006-1 in the absence of a party asserting an adverse position, and stated, "The Trustee does not dispute that the failure of another party to appear in the Triaxx 2006-1 Interpleader following Goldman's withdrawal deprives the Court of Article III jurisdiction to adjudicate the Triaxx 2006-1 Interpleader." *Id*. at 2. On January 12, 2021, the Court entered the requested order. (Dkt. No. 328.)

That same day, the Trustee initiated the Second Action by filing a Petition (Pet.) (Dkt. No. 9-1 in Case No. 21-CV-439) in State Court, pursuant to N.Y. C.P.L.R. (CPLR) Article 77, seeking

judicial instructions concerning four issues (with respect to Triaxx 2006-1 only) "pending the outcome" of the Original Action: (i) whether the Trustee should release or withhold the portion of the Phoenix Invoices that would otherwise have become available for payment as Administrative Expenses by the date of the Petition; (ii) whether it should release or withhold funds in the future with respect to the Phoenix Invoices; (iii) whether it should release or withhold the Interpleader Legal Fees presented to it for payment; and (iv) whether it should release or withhold funds in the future with respect to additional Interpleader Legal Fees presented for payment. Pet. ¶¶ 11, 48.[5]

In its Petition, the Trustee explains that it is a "representative of the Noteholders" in 2006-1, Pet. ¶ 9, and that, as such, it believes the "appropriate course of action" (consistent with its duty to act as a "prudent person," *see id*. ¶ 4) is to continue to withhold payment on the Phoenix Invoices and the Interpleader Legal Fees, thus preserving the *status quo* and avoiding the possibility of making payments "that are ultimately determined by a court to be impermissible under the terms of the documents that govern the Triaxx CDOs." *Id*. ¶¶ 8-9, 46. Further, according to the Trustee, if it releases the disputed funds, "a dispute may arise among the Noteholders, Collateral Manager, Phoenix, the [2006-1] Issuer," and others, "regarding whether or not such amounts should have been released." *Id*. ¶ 44. Therefore, the Trustee requests a court order, "binding upon the Noteholders, Collateral Manager, Phoenix, the [2006-1] Issuer," and others, "instructing" it to release or withhold the contested sums, "finding" that any action taken in compliance with those instructions will be "deemed to comply with all applicable duties under, and be fully authorized and protected by, the Indenture" and related contracts, and barring "the Noteholders and any other

---

[5] As of the date of the Petition, the Trustee was retaining, in the accounts of Triaxx 2006-1, over $2.2 million with respect to the Phoenix Invoices and over $1.3 million with respect to the Interpleader Legal Fees. Pet. ¶ 39.

parties claiming rights in the Triaxx 2006-1 CDO" from asserting any "claims against the Trustee" as to the disputed payments. *Id*. at 17-18.

Along with its Petition, the Trustee filed a proposed Order to Show Cause (OSC) (Dkt. No. 9-6 in Case No. 21-CV-439) and supporting memorandum asking the State Court to order, "as an interim measure," that the Trustee "set aside and withhold" (or "continue to withhold") funds with respect to the Phoenix Invoices and the Interpleader Legal Fees, OSC ¶¶ 3-6, and that it be "discharged, released, and exculpated from any and all liability" for the withholding, "provided that it is done in accordance with the terms of this Order." *Id*. ¶ 7.[6]

On March 31, 2021, ruling on the parties' Rule 12(c) motions in the Original Action, the Court: (1) dismissed the portion of the Trustee's interpleader claim (as well as the corresponding portions of TAM's declaratory judgment counterclaim and PIMCO's affirmative claim to the *res*) seeking relief concerning the Interpleader Judgment Fees, because no judgment had been issued, much less presented to the Trustee for indemnification, making the dispute "speculative, hypothetical and contingent on the outcome of intervening events," *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt.*, 2021 WL 1227052, at *22-23; (2) declared that "neither the Issuers nor the Collateral Manager may pay Phoenix's fees directly from the Recoveries, outside of the Waterfall," *id*. at *2, 23, 26, and dismissed the TAM Parties' counterclaims to the extent they sought a contrary declaration, *id*. at *26; (3) dismissed the Trustee's damages claims against the Issuers as barred by § 2.6 of the Indentures, *id*. at *27; and (4) dismissed the Trustee's conversion claim as duplicative of its contract claim. *Id*. at *29. All of the other claims, counterclaims, and cross-claims in the Original Action remain for adjudication, including – as relevant here – the TAM Parties' counterclaims seeking a declaration that Phoenix is entitled to payment on the Phoenix Invoices

---

[6] The State Court did not issue the OSC prior to removal.

(as Administrative Expenses, through the Waterfall) and that both TAM Parties are entitled to payment of their Interpleader Legal Fees. TAM Ans. ¶ 208; Phoenix Ans. ¶ 222.

## The Parties' Positions

The TAM Parties removed the Second Action pursuant to 28 U.S.C. §§ 1441 and 1446, asserting that this Court has subject matter jurisdiction of the removed action pursuant to the Edge Act, 12 U.S.C. § 632. Not. of Removal ¶¶ 26-28.[7] In its brief in support of its remand motion, made pursuant to 28 U.S.C. § 1447(c) on the ground that "the district court lacks subject matter jurisdiction," the Trustee does not dispute the applicability of the Edge Act. Trustee Mem. (Dkt. No. 347) at 7 n.4. Rather, it argues that because the Petition was filed under CPLR Art. 77 to seek "judicial instruction" from the State Court "about whether a future course of conduct is proper," and because the Trustee does not allege any "injury in fact" traceable to the conduct of the Respondents and redressable by the State Court, the Second Action "does not raise an actual case or controversy between the Trustee and any other party." Trustee Mem. at 1, 7-11.

The TAM Parties respond that the Second Action presents a constitutionally sufficient case or controversy in that the Trustee has actively refused since 2018 to pay the Phoenix Invoices or the Interpleader Legal Fees from the accounts of Triaxx 2006-1, despite demand for payment from the TAM Parties, giving rise to a "definite" and "concrete" controversy. TAM Pty. Mem. (Dkt. No. 351) at 1-2, 6-10. They add that the relief sought by the Trustee in the Second Action would not

---

[7] The Edge Act provides federal district courts with an independent basis for subject matter jurisdiction over "all suits of a civil nature at common law or in equity" that (i) involve a party that is "a federally chartered corporation" and (ii) "arise out of an offshore banking or financial transaction of that federally charted corporation." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 784 (2d Cir. 2013). In the Original Action, the Trustee expressly invoked this Court's jurisdiction pursuant to the Edge Act, noting that it is a national banking association and that the Issuers are organized under the laws of the Cayman Islands. TAC ¶ 13; *see also U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt.*, 2021 WL 1227052, at *10 & n.17 (agreeing with the Trustee that this Court has jurisdiction over the Original Action pursuant to the Edge Act).

be a "mere advisory opinion" but would function, in substance, as a declaratory judgment approving its refusal and protecting it from "a threat of future civil liability," which is sufficient to constitute an injury in fact. *Id*. at 11-14.

### Legal Standards

CPLR Article 77 authorizes and governs a "special proceeding" brought "to determine a matter relating to any express trust." CPLR § 7701. As our Circuit has explained, "Permissible uses of Article 77 are 'broadly construed to cover any matter of interest to trustees, beneficiaries or adverse claimants concerning the trust.'" *BlackRock Fin. Mgmt. Inc. v. Segregated Acct. of Ambac Assur. Corp.*, 673 F.3d 169, 174-75 (2d Cir. 2012) (quoting *Greene v. Greene* (*In re Greene*), 88 A.D.2d 547, 451 N.Y.S.2d 741, 743 (1st Dep't 1982)). "Such proceedings are used by trustees to obtain instruction as to whether a future course of conduct is proper, and by trustees (and beneficiaries) to obtain interpretations of the meaning of trust documents." *Id*.

The parties agree that Article 77 can be used to resolve disputes among CDO stakeholders. TAM Pty Mem. at 7 n.4 (collecting cases).[8] They further agree that whether an action is properly brought pursuant to Article 77 is not dispositive of (or even particularly relevant to) whether it is "justiciable" in federal court; that is, whether it presents a case or controversy as required by Article III of the United States Constitution. *See* Trustee Mem. at 11-12; Trustee Reply Mem. (Dkt. No. 352) at 1; TAM Pty. Mem. at 7 n.4 (collecting cases in which federal courts have accepted

---

[8] Shortly after it filed the Second Action, U.S. Bank filed another special proceeding in the State Court to resolve a different dispute concerning the Triaxx CDOs. *See U.S. Bank Nat'l Ass'n as Tr. of Triaxx Prime CDO 2006-1, Ltd. v. XXX*, 72 Misc. 3d 1205(A), 147 N.Y.S.3d 891 (N.Y. Sup. Ct., N.Y. Cty. 2021) (noting that Article 77 was an "appropriate" vehicle for resolving a dispute among the Trustee, PIMCO and another noteholder – Serengeti – concerning when the proceeds of certain collateral sales should be distributed, and ultimately rejecting the Trustee's view and accepting Serengeti's that "the Collateral Proceeds are to remain in the Collection Accounts until the Quarterly Distribution Date").

jurisdiction over removed petitions originally brought in state courts under Article 77 or similar "trust-instruction statutes").[9] I therefore address that question based on first principles and the substance of the Petition.

"It is axiomatic that the federal courts are vested with only limited subject-matter jurisdiction. Among the jurisdictional limitations imposed by the case or controversy [requirement] of Article III of the Constitution is the requirement of 'a substantial controversy, between parties having adverse legal interests.'" *In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 175 (S.D.N.Y. 2015) (quoting *Port Wash. Teachers' Ass'n v. Bd. of Educ. of Port Wash. Union Free Sch. Dist.*, 478 F.3d 494, 501 (2d Cir. 2007), and citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The same standard applies to declaratory judgment claims brought pursuant to 28 U.S.C. § 2201, which are in some ways analogous to Article 77 proceedings. *See* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, 553 (S.D.N.Y. 2013) (a declaratory judgment action presents a justiciable dispute when "the facts alleged, under all the circumstances, show that there is a

---

[9] None of the cases cited by the TAM Parties for this point turn upon the case-or-controversy issue. By the same token, the Trustee has not identified any reported case in which a federal court has dismissed or remanded an Article 77 petition for lack of a case or controversy. *Cf.* Order, *In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, No. 13-CV-8428-NRB, ECF No. 67 (S.D.N.Y. April 10, 2015) (unreported order severing and remanding five of six consolidated actions originally commenced in a Minnesota state court under the Minnesota trust-instruction statute after no party responded to the federal court's "tentative conclusions" that it lacked subject matter jurisdiction over those five actions). Thus, as the TAM Parties observe – and as the Trustee concedes – "there is no reported decision directly on point here." TAM Pty. Mem. at 7; Trustee Reply Mem. at 5.

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)), *aff'd,* 564 F. App'x 631 (2d Cir. 2014). Such an action is appropriate when the judgment sought (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). This requirement "circumscribes federal jurisdiction to real conflicts so as to preclude the courts from gratuitously rendering advisory opinions with regard to events in dispute that have not matured to a point sufficiently concrete to demand immediate adjudication and thus that may never materialize as actual controversies." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002), *aff'd,* 346 F.3d 357 (2d Cir. 2003).

A federal plaintiff must also show that it has standing to seek the relief requested. This "irreducible constitutional minimum" contains "three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan,* 504 U.S. at 560-61, and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

The party asserting the existence of federal jurisdiction bears the burden of establishing it. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *Dow Jones*, 237 F. Supp. 2d at 404. However, there is no mechanical test to determine "[t]he difference between definite, concrete and substantial controversies which are justiciable, and hypothetical, abstract, or academic ones which are not justiciable." *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501,

504 (2d Cir. 1968). The question "is necessarily one of degree," *Maryland Cas. Co.*, 312 U.S. at 273, "to be determined on a case by case basis." *Muller*, 404 F.2d at 504.

<u>Analysis</u>

The TAM Parties have adequately demonstrated that the Second Action presents a justiciable dispute. TAM and Phoenix have pursued payment of the Phoenix Invoices (as Administrative Expenses, through the Waterfall) for more than three and a half years (since March 29, 2018, *see* TAC ¶ 50); have pursued payment of the Interpleader Legal Fees for almost as long (since June 1, 2018, *see* TAC ¶ 63); have continued to "assert" and "insist" that they are entitled to payment of the disputed sums, TAC ¶¶ 54, 55, 63, 65, 66, 67; Pet. ¶¶ 24, 27, 30; and have interposed counterclaims in the Original Action seeking a declaratory judgment to that effect. TAM Ans. ¶ 208 & Prayer ¶ (ii); Phoenix Ans. ¶ 222 & Prayer ¶ (c). The Trustee has just as consistently withheld the contested funds; has repeatedly asserted that it intends to continue doing so until and unless it is instructed otherwise by a court; and has answered the TAM Parties' declaratory judgment counterclaims by denying all "such allegations." TAC ¶¶ 60, 68; Pet. ¶¶ 9, 39, 46; U.S. Bank Ans. to TAM Counterclaim and Crossclaim (Dkt. No. 223) ¶ 208 & Prayer; U.S. Bank Ans. to Phoenix Crossclaims and Counterclaims (Dkt. No. 222) ¶ 222 & Prayer. Meanwhile, the sums at issue have continued to grow. As of the date of the Petition, the Trustee was withholding approximately $3.5 million, in the accounts of Triaxx 2006-1 alone, with respect to the Phoenix Invoices and the Interpleader Legal Fees. Pet. ¶ 39.

Cases presenting this fact pattern – a demand for payment or performance by one party and a refusal to pay or perform by another – are routinely held to be justiciable, regardless of which party first invokes the court's jurisdiction. *See Maryland Cas. Co.*, 312 U.S. at 273 ("It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the

11

conventional suit are reversed; the inquiry is the same in either case."); *Levi & Korsinsky, LLP v. Bower*, 2015 WL 10437758, at *1-3 (S.D.N.Y. Feb. 16, 2015) ("actual controversy" found where law firm sought declaratory judgment against California lawyer who claimed that firm was required to pay him 10% of the fees generated by cases in which he served as local counsel); *Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242, 246 (S.D.N.Y. 2009) ("actual controversy" found where Wells Fargo sought declaratory judgment that it had no obligation to refund money paid to it by Sharma pursuant to the terms of the parties' swap agreement, after Sharma "demanded" a refund when attempting to rescind the agreement). *See also MedImmune*, 549 U.S. at 126-34 ("case or controversy" found where patent licensor demanded royalty payments that licensee did not believe it owed; court had jurisdiction even though licensee made the disputed payments, "under protest" before suing for a declaration that no royalties were owed); *Apollo Enter. Sols., Inc. v. Lantern Credit, LLC*, 2018 WL 437472, at *3 (C.D. Cal. Jan. 16, 2018) (threats to bring a patent infringement action, coupled with demand to pay royalties, "are sufficient to establish a real and substantial controversy as contemplated by the Declaratory Judgment Act," giving federal court subject matter jurisdiction over claim for declaration of noninfringement).

Here, the dispute between the TAM Parties and the Trustee is "concrete," in that the Trustee is actually withholding the funds to which the TAM Parties have a claim, not merely threatening to do so, and "substantial," in that more than $3.5 million is now being retained by the Trustee. *Muller*, 404 F.2d at 504. There is nothing "hypothetical, abstract, or academic" about the controversy, *id.*; nor is it insufficiently "mature" to be adjudicated. *Dow Jones*, 237 F. Supp. 2d 394, 404.[10] Further, the "judicial instruction" sought in the Petition would be neither "gratuitous"

---

[10] Indeed, by filing a "special proceeding" under Article 77, the Trustee sought to avail itself of "a quick and inexpensive way" to adjudicate that controversy, David D. Seigel and Patrick M. Connors, *New York Practice* § 547, at 1054 (6th ed. 2018), likely ahead of any judgment rendered

nor "advisory." *Id*. Rather, the Trustee expressly asks for an order that would be "binding" upon it, the TAM Parties, the 2006-1 Issuer, and others, and that – in addition to resolving whether the Trustee should "release or withhold" the sums in dispute – would protect the Trustee from any future claims, by anyone, arising out of its actions or omissions in accordance with that judicial instruction. Pet. at 17-18. It is difficult to imagine an outcome that would more powerfully "clarify[ ] and settl[e] the legal relations in issue," or would more definitively "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp.*, 417 F.2d at 1001.

The Trustee nonetheless insists that the Second Action is "non-adversarial" because it has merely "expressed what it believes to be an appropriate course of action" rather than taking a "legal position" as to whether it should "release" or "continue to withhold" the money that the TAM Parties contend they are due. *See* Trustee Mem. at 5-6 (the Trustee "remains agnostic" to the resolution of the issues it tendered to the State Court); Trustee Reply Mem. at 3-4 (noting that while it has refused to pay the Phoenix Invoices and the Interpleader Legal Fees, it has done so without expressly "challeng[ing] the validity" of the TAM Parties' payment demands or taking "a legal position opposite" theirs). As to this issue, however, the federal courts "are concerned with substance rather than form." *U.S. Fid. & Guar. Co. v. Pierson*, 97 F.2d 560, 562 (8th Cir. 1938); *see also EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811–12 (Fed. Cir. 1996) ("The test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling."), *overruled in part on other grounds*, *MedImmune*, 519 U.S. at 132 n.11.

---

in the Original Action. In New York, a special proceeding is "as plenary as an action, culminating in a judgment, but is brought on with the ease, speed, and economy of a mere motion," thus "[c]ombining the best of both worlds." *Id*.

In the Petition, the Trustee explains that it holds Triaxx 2006-1's Collateral "on behalf of the Noteholders," Pet. ¶ 17, and after an Event of Default (which allegedly occurred in Triaxx 2006-1 on March 8, 2018), it acquired a duty to "exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." *Id*. ¶ 19; 2006-1 Indenture (Dkt. No. 211-1) § 6.1(b). That duty is independent of "whether another Noteholder appears" to take up Goldman's mantle in the Original Action. Pet. ¶ 42. Thus, when the Trustee alleges (in "polite terms," *EMC Corp.*, 89 F.3d at 811) that it "believes" that the "appropriate course of action" is to "continue to withhold" the $3.5 million already set aside and likewise to withhold future payments on the Phoenix Invoices and indemnification of the Interpleader Legal Fees as presented, Pet. ¶¶ 9, 46 – and when it affirmatively asks for an OSC that would *require it* (albeit as an interim measure) to do just that – it is, in substance, asserting a legal position adverse to that of the TAM Parties.

Finally, the Trustee argues that since the Petition does not describe any "injury in fact" which is fairly traceable to the "challenged conduct of the [Respondents]" and "likely to be redressed by a favorable judicial decision," Trustee Mem. at 10 (quoting *Spokeo*, 578 U.S. at 338), it "does not allege standing by federal standards" and should not have been removed. *Id*. It is well-settled, however, that standing to bring a declaratory judgment claim may be premised on threatened rather than actual injury, *see Spokeo*, 578 U.S. at 341 (a "risk of real harm" can satisfy the requirement); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (standing requires an "actual or threatened injury"), including a non-speculative threat of litigation. *See* 10B Wright & Miller, *Federal Practice and Procedure* § 2751, at 427 (4th ed. 2016) (the declaratory judgment remedy "gives a means by which rights

and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so").[11]

Here, the TAM Parties have not merely threatened suit; they have sued. Their existing counterclaims, in the Original Action, seek a declaration that they are entitled to the same funds that are the subject of the Second Action.[12] Moreover, the relief sought in the Second Action includes an order barring "the Noteholders and *any other parties* claiming rights in the Triaxx 2006-1 CDO" from asserting any "claims against the Trustee" as to the disputed payments. Pet. at 17-18 (emphasis added). Were the State Court to issue such an order, instructing the Trustee to continue to withhold the disputed sums, it would seemingly bar the TAM Parties from proceeding

---

[11] In the insurance context, for example, carriers commonly seek declarations of noncoverage against their insureds (or against third parties with claims against their insureds) based on the risk of future litigation. *See*, *e.g.*, *Maryland Cas. Co.*, 312 U.S. at 272-74; *Empire Fire & Marine Ins. Co. v. Elrac, Inc.*, 2006 WL 3734308, at *2 (S.D.N.Y. Dec. 18, 2006). Similarly, a "common" declaratory judgment action is "a suit by one thought to be an infringer for a declaration that he is not infringing the patent or that the patent is invalid. If declaratory relief were unavailable, a person accused of infringement would be in a difficult position. The patentee would be free to sue when and as the patentee liked and until suit was filed, the patentee could harm the alleged infringer's business by threatening suit against him and his customers. The availability of declaratory relief makes it possible for controversies of this kind to be resolved promptly." 10B *Federal Practice and Procedure* § 2761, at 550-52. The same is true in many other areas of law. *See*, *e.g.*, *Museum of Mod. Art v. Schoeps*, 549 F. Supp. 2d 543, 548 (S.D.N.Y. 2008) (museums were entitled to seek declaratory judgment that Schoeps "had no valid claim" to artworks once owned by his great-uncle, because Schoeps had "stated his clear intent to pursue every avenue to obtain the Picasso paintings he believes were wrongfully forced from his distinguished ancestor," and museums were not "obliged to sit on their hands while Schoeps decides when next to attack").

[12] If subject matter jurisdiction is lacking, the parties cannot waive that defect by silence or otherwise. *See Oneida Indian Nation v. Phillips*, 981 F.3d 157, 170 (2d Cir. 2020) ("Lack of subject matter jurisdiction . . . may not be waived or forfeited."), *cert. denied,* 141 S. Ct. 2878 (2021). Nonetheless, the Trustee's current contention that its dispute with the TAM Parties is non-justiciable seems at odds with its failure to assert, either in its pleadings or in its Rule 12(c) motion, a similar contention with respect to the TAM Parties' declaratory judgment counterclaims. *See* U.S. Bank Ans. to Phoenix Crossclaims and Counterclaims; U.S. Bank Ans. to TAM Counterclaim and Crossclaim; U.S. Bank Mem. of Law in Support of 12(c) Motion (Dkt. No. 231.)

with those counterclaims, thus protecting the Trustee not only from an adverse declaration but also from the legal fees and other costs associated with those counterclaims. (Similarly, if the State Court issued an order instructing the Trustee to pay the TAM Parties, it would bar potential future suits from other "interested parties" unhappy about those payments. *See* Pet. ¶ 44.) As a practical matter, therefore, the Second Action, if successful, would redress a variety of actual and threatened injuries to the Trustee. *See Levi & Korsinsky*, 2015 WL 10437758, at *3 (declaratory judgment suit by law firm against local counsel claiming an entitlement to fees was appropriate where the declaration sought would resolve both an existing action by the local counsel and potential future actions arising from other cases).

## Conclusion

For the reasons stated above, the Trustee's remand motion (Dkt. No. 346) is DENIED. The Second Action will remain before this Court. Within two weeks of today's date, after meeting and conferring, the parties shall submit a joint letter (if possible) or separate letters (if necessary) addressing how most efficiently to resolve the Trustee's removed claim in conjunction with the Original Action.

Dated: New York, New York
       October 26, 2021

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

16