April 8, 2022

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/12/22

**NORTON ROSE FULBRIGHT**

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
United States

**VIA ECF**
The Honorable Barbara Moses
United States Magistrate Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

**Sandeep Savla**
**Co-Head of Regulatory, Investigations, Securities and Compliance, United States**
Direct line +1 212 318 3159
sandeep.savla@nortonrosefulbright.com

Tel +1 212 318 3000
Fax +1 212 318 3400
nortonrosefulbright.com

**MEMO ENDORSED**

Re:   *U.S. Bank National Association v. Triaxx Asset Management LLC, et al.,* No. 18-cv-04044 (BCM)

Dear Judge Moses:

Pursuant to Local Civil Rule 37.1 and the Court's Individual Practices, I write on behalf of Pacific Investment Management Company LLC ("PIMCO") to request a discovery conference to seek a protective order with respect to three depositions that Triaxx Asset Management LLC ("TAM") and Phoenix Real Estate Solutions Ltd. ("Phoenix," and together with TAM, the "TAM Parties") seek in the above-captioned action. One of the individuals whom the TAM Parties seek to depose was in-house counsel operating in a legal capacity at all relevant times to this litigation, while the other two are high-level managing directors who lack unique relevant knowledge. These three superfluous depositions would be in addition to two other depositions to which PIMCO has already agreed, one of a fact witness and one pursuant to FRCP Rule 30(b)(6), meaning that the TAM Parties seek a total of five depositions from PIMCO as a single interpleader defendant.

In an effort to avoid burdening the Court with this request, on March 15, 2022, my colleague Anthony Lauriello and I met and conferred with Anil Vassanji, for the TAM Parties, for approximately 20 minutes. As the meet and confer was to no avail, this letter ensues.

<u>Deposition of Richard LeBrun As In-House Counsel</u>

On March 7, 2022, the TAM Parties noticed depositions of several persons (Ex. A), including Richard LeBrun, who at all relevant times was the PIMCO in-house counsel working in PIMCO's Legal Department to oversee this litigation and a prior litigation initiated in 2016 before Judge Nathan concerning TAM, and one of the same transactions at issue here, Triaxx 2007-1. *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt., LLC*, No. 1:16-cv-08507 (AJN) (Dkt. 1) (the "<u>Prior Interpleader</u>"). During the March 15th meet and confer, the TAM Parties stated that they sought Mr. LeBrun's deposition in order to ascertain the "business reasons" behind PIMCO's objections to the payments sought by the TAM Parties and their agents and to the indemnification of any judgment. PIMCO's objections were in the form of correspondence from PIMCO's outside

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.



April 8, 2022
Page 2

litigation counsel to the Trustee, not from Mr. LeBrun. (Ex. B.) These objections formed the basis for U.S. Bank National Association (the "Trustee")'s interpleader claims as described in the Third Amended Complaint. (Dkt. 203 ¶¶ 52, 62, 71.)

*First*, Mr. LeBrun acted at all relevant times as an attorney in PIMCO's Legal Department and, therefore, any information that he possesses regarding the case, let alone the approvals for the objections, is protected by the attorney-client privilege. In its interrogatory responses, PIMCO already identified the *fact* of Mr. LeBrun's approval to the objections asserted by PIMCO's outside counsel (Ex. C), and nothing further would be gained from a deposition concerning the privileged *reasons* why he approved them. During the relevant time, Mr. LeBrun's sole title and role was Deputy General Counsel at PIMCO's Legal Department reporting to the General Counsel, and in this capacity, he managed this litigation and the Prior Interpleader. (LeBrun Aff. (Ex. D) ¶¶ 2, 4.) Based on this title and role, the Court may appropriately presume that he acted in a legal capacity. *See Boca Investerings P'ship v. U.S.*, 31 F.Supp.2d 9, 12 (D.D.C. 1998) ("There is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice, while the opposite presumption applies to a lawyer . . . who works for the Financial Group or some other seemingly management or business side of the house.") (*citing Hardy v. N.Y. News, Inc.*, 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987)). Mr. LeBrun's legal role is all the more incontrovertible, however, because the deliberations regarding the objections were made in consultation with outside litigation counsel (LeBrun Aff. (Ex. D) ¶¶ 5-7) and because, at base, the actual objections to the Trustee were legal in nature, replete with legal contentions that the payments that the TAM Parties sought were impermissible under the governing Indentures. (LeBrun Aff. (Ex. D) ¶ 8, Ex. B.) In sum, these various facts compel one conclusion: Mr. LeBrun was in-house legal counsel for PIMCO, and if the TAM Parties really seek to ascertain the "business reasons" behind PIMCO's objections, the appropriate deponent is not Mr. LeBrun, but the Portfolio Manager for PIMCO's investment in Triaxx 2007-1, Ms. Giang Bui (whom PIMCO has agreed to make available).

*Second*, Mr. LeBrun's reasons for approving the objections also constitute the paradigm of attorney work product. Directing the Trustee not to pay the TAM Parties created the near certainty that the Trustee would initiate interpleader litigation, not least because a similar demand to the Trustee concerning TAM's refusal to direct the sale of defaulted securities had resulted in the Trustee initiating the Prior Interpleader. *See* Prior Interpleader ¶¶ 30-31, 38; (LeBrun Aff. (Ex. D) ¶ 4). In fact, two of the three objections at issue were made after the Trustee had already initiated an interpleader based on PIMCO's initial objection, rendering it an actual certainty that these additional objections would result in interpleader litigation. (LeBrun Aff. (Ex. D) ¶ 7.) It is likewise telling that the actual objections were transmitted to the Trustee by outside *litigation* counsel, reflecting the clear and contemporaneous anticipation of litigation. And even though Mr. LeBrun acted as an attorney, to render it even more beyond peradventure that the work product protection applies, the law in the Second Circuit is generously protective, and holds that discovery concerning even "business decisions" are protected under the work product privilege if the relevant information arises "in anticipation of litigation." *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998) ("The fact that a document's purpose is business-related appears irrelevant to the

question whether it should be protected under Rule 26(b)(3)."). As a result, any deposition would simply be a futile exercise requiring constant directions from counsel to Mr. LeBrun not to answer any substantive question because of the attorney-client and work product privileges.

*Third*, well-established law in this Court and Circuit strongly advises against the attorney deposition that the TAM Parties seek. As this Court has held, depositions of counsel are "disfavored" and subject to "heightened scrutiny." *Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693(PAE), 2015 WL 5148753, at *3 (S.D.N.Y. 2015). Similarly, the Second Circuit has articulated four factors to evaluate whether an attorney should be deposed, all of which strongly weigh against a deposition: "(1) the need to depose the lawyer, (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, (3) the risk of encountering privilege and work product issues, and (4) the extent of discovery already conducted." *KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, 19CV2918 (PMH)(LMS), 2020 WL 1989487, at *3 (S.D.N.Y. 2020) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003)). Each factor compels no deposition of Mr. LeBrun: (1) there is no need to depose him about the "business reasons" for the objections, as the TAM Parties will obtain testimony from the relevant business person, Ms. Giang Bui, who served as the Portfolio Manager for PIMCO's investment in Triaxx 2007-1 (and whom PIMCO has agreed to make available); (2) Mr. LeBrun's role as in-house counsel was to approve and manage this litigation and he has no involvement with any of the underlying facts of this case; (3) Mr. LeBrun's testimony would be privileged and work product; and (4) PIMCO has already consented to the testimony of Ms. Bui as Portfolio Manager and will designate her as a corporate representative once the TAM Parties issue a Rule 30(b)(6) notice.

The Depositions of Sharad Bansal and Alfred Murata

In addition to the depositions they seek of Ms. Bui as the Portfolio Manager and the Rule 30(b)(6) notice to PIMCO that is apparently forthcoming, the TAM Parties also noticed the depositions of two senior PIMCO business personnel, Sharad Bansal and Alfred Murata. (Ex. A.) In the March 15th meet and confer, the TAM Parties' supposed justification for these additional depositions was that, based on their review of Ms. Bui's documents, Mr. Bansal and Mr. Murata are high-level managing directors who may possess information regarding PIMCO's reasons for acquiring and holding the notes in the Triaxx 2007-1 transaction. In addition, the TAM Parties asserted that, based on their review of Ms. Bui's documents, Mr. Bansal has knowledge of the "activist litigation" for which Phoenix was purportedly engaged.

These justifications fail for two reasons. *First*, the TAM Parties cannot articulate any reason why PIMCO's reasons for holding and acquiring the notes are relevant to the action. In fact, the TAM Parties already moved to compel the production of much of the same information in the form of "documents reflecting PIMCO's holdings of the notes, including mark-to-market valuations, evidence of the CDOs' payments to PIMCO, and other documents such as trade tickets, trading records and tape recordings." (Dkt. 355 at 1-2.) The Court, however, denied the TAM Parties from seeking such extraneous "trading information." (Dkt. 364 at 2 ("[It] would not add to the TAM Parties' knowledge concerning 'how much PIMCO has received from the CDOs.' Nor could



April 8, 2022
Page 4

PIMCO's trading records shed any light on whether the proceeds of its investments were decreased by the Phoenix payments or increased as a result of Phoenix's work. PIMCO need not produce the requested trading records.").) A deposition on these same subjects would be just as irrelevant.

*Second*, the depositions that the TAM Parties seek from Mr. Bansal and Mr. Murata as two high-level managing directors are, at best, wholly duplicative of anything that could be ascertained from Ms. Bui—the sole PIMCO document custodian, a percipient deposition witness in her role as Portfolio Manager for Triaxx 2007-1, and to-be designated 30(b)(6) representative. In this District, "[c]ourts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some *unique* knowledge that is relevant to the action." *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (collecting cases) (emphasis added). Mr. Bansal and Mr. Murata lack any unique knowledge because Ms. Bui was the Portfolio Manager responsible for the daily management of Triaxx 2007-1, including for acquiring and pricing PIMCO's notes in that transaction. (Bui Aff. (Ex. E) ¶ 3.) Indeed, as Portfolio Manager, she has more knowledge about the transaction than Mr. Bansal and Mr. Murata, neither of whom were involved in the daily management of the transaction. (Bui Aff. (Ex. E) ¶3; Bansal Aff. (Ex. F) ¶ 2; Murata Aff. (Ex. G) ¶ 2.) Ms. Bui's superior knowledge about the transaction is exemplified, for example, by the fact that Mr. Bansal's general role at PIMCO, at all times relevant to this litigation, was to evaluate the *collateral* that underlies structured transactions such as Triaxx 2007-1. (Bansal Aff. (Ex. F) ¶ 2.) Here, the underlying collateral in the Triaxx 2007-1 transaction–residential mortgage-backed securities–has nothing whatsoever to do with the interpleader claims. The Bansal and Murata depositions would thus serve no purpose, but would disrupt their activities as high-level managing directors who oversee funds with billions of dollars in assets—with Mr. Murata alone overseeing over $200 billion dollars of assets. (Bansal Aff. (Ex. F) ¶ 3; Murata Aff. (Ex. G) ¶ 3.) These funds require Mr. Bansal's and Mr. Murata's constant attention and frequent client calls, especially in the current volatile market environment. (Bansal Aff. (Ex. F) ¶ 3; Murata Aff. (Ex. G) ¶ 3.) For these various reasons, these depositions would constitute nothing more than redundant harassment. *See Consol. Rail Corp. v. Primary Indus. Corp.,* No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y., Sept. 10, 1993) ("[P]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation. Accordingly, where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive."). Finally, in the vanishingly unlikely instance that there may exist any information at PIMCO that is not in Ms. Bui's possession, she will testify pursuant to Rule 30(b)(6) as PIMCO's corporate representative. In sum, the discovery sought from Mr. Bansal and Mr. Murata "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*, No. 91 Civ 2287, 1995 WL 6259, at *2 (S.D.N.Y., Jan. 9, 1995) (citing Fed. R. Civ. P. 26 (b)(2)).

\* \* \*

For the foregoing reasons, PIMCO respectfully requests that the Court schedule a conference to enter a protective order regarding the LeBrun, Bansal, and Murata depositions noticed by the TAM Parties.

NORTON ROSE FULBRIGHT

April 8, 2022
Page 5

Respectfully submitted,

*/s/ Sandeep Savla*

Sandeep Savla
Of Norton Rose Fulbright US LLP

> Application GRANTED to the extent that the Court will hold a discovery conference on **April 21, 2022 at 10:00 a.m.** in Courtroom 20A of the Daniel Patrick Moynihan United States Courthouse. TAM Parties' opposition to this letter-motion is due no later than **April 13, 2022** with PIMCO's optional reply due no later than **April 15, 2022**. Moses Ind. R. Prac. § 2(e). SO ORDERED.
>
> _____
> Barbara Moses
> United States Magistrate Judge
> April 12, 2022