UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *solely in its capacity as Trustee,* | : | |
| | : | |
| Interpleader Plaintiff, | : | |
| | : | Case No. 1:18-cv-04044 (BCM) |
| - against - | : | |
| | : | |
| TRIAXX ASSET MANAGEMENT LLC (f/k/a ICP ASSET MANAGEMENT LLC); TRIAXX PRIME CDO 2006-1, LTD.; TRIAXX PRIME CDO 2006-2, LTD.; TRIAXX PRIME CDO 2007-1, LTD.; PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC; GOLDMAN SACHS & CO.; PHOENIX REAL ESTATE SOLUTIONS LTD.; CEDE & CO. and JOHN DOES 1- 100, | : : : : : : : : : : : | **JOINT PRETRIAL ORDER** |
| Interpleader Defendants. | : | |

Pursuant to Rule 4(b) of Your Honor's Individual Rules and Your Order, dated September 19, 2022 (Dkt. 449), Interpleader Plaintiff U.S. Bank National Association, in its capacity as Trustee ("**U.S. Bank**" or "**Trustee**")[1] and Interpleader Defendants Triaxx Asset Management LLC ("**TAM**"), Phoenix Real Estate Solutions Ltd. ("**Phoenix**" and together with TAM, the "**TAM Parties**"), Triaxx Prime CDO 2006-1, Ltd. ("**Triaxx 2006-1**"), Triaxx Prime CDO 2006-2, Ltd. ("**Triaxx 2006-2**"), Triaxx Prime CDO 2007-1, Ltd. ("**Triaxx 2007-1**" and together with Triaxx 2006-1 and Triaxx 2006-2, the "**Issuers**"), Pacific Investment Management Company LLC ("**PIMCO**"), and Citigroup Global Markets, Inc. ("**Citi**" and together with the Trustee, TAM Parties, the Issuers, and PIMCO, the "**Parties**"), having conferred among themselves, submit the following Joint Pretrial Order.[2]

**i.     FULL CAPTION OF THE ACTION**

Please see above.

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Third Amended Interpleader Complaint (Dkt. 203) (the "**Complaint**" or "**TAC**").

[2] Cede & Co. is named as a nominal defendant.

ii.     **TRIAL COUNSEL**

**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Office: (212) 210-9400
Fax: (212) 210-9444

**Alexander S. Lorenzo**
alexander.lorenzo@alston.com
Cell: (646) 753-2240
**Elizabeth A. Buckel**
elizabeth.buckel@alston.com
Cell: (315) 345-6951
**Samantha Bui**
samantha.bui@alston.com
Cell: (401) 595-1660

One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
Office: (404) 881-7000
Fax: (404) 881-7777

**Karla Doe**
karla.doe@alston.com
Cell: (678) 545-9364

*Attorneys for U.S. Bank National*
*Association, solely in its capacity*
*as Trustee*

**FRIEDMAN KAPLAN SEILER**
  **ADELMAN & ROBBINS LLP**
7 Times Square
New York, NY 10036-6516
Office: (212) 833-1100

**Anne E. Beaumont**
abeaumont@fklaw.com
Office: (212) 833-1245
**Priyanka Wityk**
pwityk@fklaw.com
Office: (212) 833-1193
**Anil K. Vassanji**
avassanji@fklaw.com
Office: (212) 833-1188

*Attorneys for Triaxx Asset Management LLC*
*and Phoenix Real Estate Solutions Ltd.*

**NORTON ROSE FULBRIGHT US LLP**

1301 Avenue of the Americas
New York, NY 10019-6022
Office: (212) 318-3253
Fax: (212) 318-3400

**Sandeep Savla**
sandeep.savla@nortonrosefulbright.com
Cell: (646) 979-0729
**Anthony Lauriello**
anthony.lauriello@nortonrosefulbright.com
Cell: (505) 249-7381

*Attorneys for Pacific Investment
Management Company LLC*

**WOLLMUTH MAHER & DEUTSCH
  LLP**
500 Fifth Avenue
New York, NY 10110
Office: (212) 382-3300
Fax: (212) 382-0050

**Randall R. Rainer**
rrainer@wmd-law.com
Cell: (917) 583-5546
**Michael C. Ledley**
mledley@wmd-law.com
Cell: (917) 301-5882

*Attorneys for Triaxx Prime CDO 2006-1,
Ltd., Triaxx Prime CDO 2006-2, Ltd. and
Triaxx Prime CDO 2007-1, Ltd.*

**DAVIS POLK & WARDWELL LLP**

450 Lexington Ave
New York, NY 10017
Office: (212) 450-4000
Fax: (212) 701-5241

**Elliot Moskowitz**
elliot.moskowitz@davispolk.com
Cell: (917) 501-7880
**Adam Greene**
adam.greene@davispolk.com
Cell: (646) 413-8221

*Attorneys for Citigroup Global Markets, Inc.*

### iii.    SUBJECT MATTER JURISDICTION

**_Trustee_**: This Court has subject matter jurisdiction under two grounds. *First*, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is a diversity of citizenship between the Interpleader Plaintiff and Interpleader Defendants.[3]  U.S. Bank is a national banking association with its main office in Cincinnati, Ohio.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that for purposes of assessing the existence of federal subject matter jurisdiction based on

---

[3] There is also diversity of citizenship between U.S. Bank and the Defendants to the direct claims, the TAM Parties and the Issuers.

diversity of citizenship, national banking associations are deemed to be "a citizen of the State in which its main office, as set forth in its articles of association, is located"). Upon information and belief, TAM is a limited liability company organized and existing under the laws of the State of Delaware, Phoenix is a limited liability company organized and existing under the laws of the State of Delaware, the Issuers are each an exempted corporation organized under the laws of the Cayman Islands, PIMCO is a limited liability company organized and existing under the laws of the State of Delaware, and Citigroup is a corporation organized and existing under the laws of the State of New York.

*Second*, this Court also has subject matter jurisdiction over this action under 12 U.S.C. § 632 (the "**Edge Act**") because it was brought by U.S. Bank, a national banking association organized under the laws of the United States, and it arises out of banking activity with a distinct foreign aspect. Specifically, U.S. Bank provides corporate trust and other related services to, or on behalf of, the Issuers, which are organized under the laws of the Cayman Islands. Thus, this action arises out of the Trustee's execution of such services on behalf of foreign issuers, which is an international banking activity.

**_Noteholders_**: PIMCO and Citi agree that the Court has subject matter jurisdiction based on the facts alleged in the Complaint.

**_TAM Parties_**: The TAM Parties agree that this Court has subject matter jurisdiction over this action.

**_Issuers_**: The Issuers do not contest subject matter jurisdiction.

## iv.    CLAIMS AND DEFENSES TO BE TRIED

**_Trustee_:**

*Interpleader Claims:* The Trustee takes no position on the outcome of the outstanding interpleader claims, but seeks the interpleader protections and relief sought in the Complaint. *See* TAC ¶ 93. In addition, in its Article 77 Petition with regard to Triaxx 2006-1, the Trustee seeks judicial instruction regarding the same issues that are the subject of the interpleader claims for Triaxx 2006-2 and Triaxx 2007-1 (the "**2006-1 Article 77**"). The 2006-1 Article 77 was removed to this Court and consolidated with this Action. *See* Dkt. 329, 387, 389 (all referencing No. 21 Civ. 439, Dkt. 9, Ex. 1). Given the overlapping issues and substantially identical governing documents among the three Triaxx CDOs, the Trustee believes that the resolution to the interpleader claims in Triaxx 2006-2 and Triaxx 2007-1 should also apply in Triaxx 2006-1.

*Direct Claims:* The Trustee seeks judgment in its favor on the following four direct claims:

### a.    Declaratory Judgment (against TAM and the Issuers)

While the Court already found that (a) Recoveries are Collateral and must be promptly disclosed and delivered to the Trustee for deposit into the appropriate Account(s) established under the Indentures rather than held by TAM and/or its agents, and (b) neither the Issuers nor TAM (and/or its agents) may pay *Phoenix's* fees directly from the Recoveries (outside of the Priority of

Payments waterfall), the Trustee seeks a declaration at trial that no disbursements are to be made from any Collateral Recoveries not delivered to the Trustee to any third party, including but not limited to Phoenix. *See* TAC ¶¶ 94–97.

### b. Breach of Contract (against TAM)

The Trustee seeks a judgment that TAM breached both the Indentures and Collateral Management Agreements. TAM breached the Indentures by making at least $38,843,121.26 in payments directly to related party Phoenix and other third parties from Collateral Recoveries rather than, as the Indentures require, delivering such Collateral Recoveries to the Trustee for payment through the Indentures' Priority of Payments waterfall. TAM breached the CMAs by taking actions that constitute gross negligence or bad faith, or harm the interests of the Noteholders in the CDOs, and failing to perform its duties in accordance with the terms of the Indentures, including failing to deliver Collateral Recoveries to the Trustee for payment through the Indentures' Priority of Payments waterfall. *See* TAC ¶¶ 98–107.

### c. Unjust Enrichment (against Phoenix)

The Trustee seeks a judgment that Phoenix was unjustly enriched when it was paid at least $22,799,194.75 by related party TAM directly from Collateral Recoveries held outside of the Accounts established under the Indentures. *See* TAC ¶¶ 121–26.

### d. Money Had and Received (against Phoenix)

The Trustee seeks a judgment that Phoenix received at least $22,799,194.75 in Collateral Recoveries that rightfully belong to the Trustee for the benefit of the Secured Parties, has not returned such Collateral Recoveries to the Trustee, and has benefitted from the receipt of such Collateral Recoveries. *See* TAC ¶¶ 127–32.

*Defenses:* TAM has asserted a declaratory judgment counterclaim against the Trustee that seeks relief against the Trustee primarily on issues that the Trustee has interplead. Those portions of TAM's declaratory judgment counterclaim are duplicative and moot. The following issues fall outside the scope of the Trustee's interpleader claims and, at trial, the Trustee will show that (1) TAM, on behalf of the Issuers, was not authorized to provide indemnification to third-party professionals for legal fees, expenses, and judgments to be paid as Administrative Expenses of the Triaxx CDOs (subpart ii of TAM's counterclaim); (2) TAM, pursuant to the Indentures, is not entitled to indemnification for any judgment against it (subpart iii of TAM's counterclaim);[4] (3) Phoenix, pursuant to the Engagement Agreements, is not entitled to be indemnified for any judgment against it (subpart iv of TAM's counterclaim); and (4) Phoenix is not entitled to any payments outside of the Triaxx CDO's Priority of Payments waterfall (subpart vi of TAM's counterclaim). The Trustee states that it acted, and continues to act, in accordance with its contractual obligations under the Indentures.

---

[4] Pursuant to the Court's Judgment on the Pleadings Decision, this question of TAM's right to indemnification for any judgment in this action was dismissed as unripe. *See* Dkt. 331 at 45–46.

**_Noteholders_**: PIMCO is the Interpleader Defendant in the below causes of action, with respect to Triaxx 2007-1. Citi is the Interpleader Defendant in the below causes of action, with respect to Triaxx 2006-2.[5]  In their position as Interpleader Defendants, PIMCO and Citi (collectively, the "**Noteholders**") plead that the alleged "Engagement Letters" entered into on March 22, 2011, and any related or subsequent agreements, are invalid.

In its Interpleader Claims, the Trustee asked the Court to resolve three disputes: (a) "whether the Phoenix Invoices constitute 'Other Administrative Expenses' pursuant to Section 1.1 and Section 11.1(a)(i)(2) of the Indentures, [and therefore] whether the Trustee is required to apply the Retained Funds in payment of the Phoenix Invoices"; (b) "whether the Trustee is required to release for payment the Interpleader Legal Fees to the Collateral Manager, the Issuers, and/or Phoenix from amounts maintained by or delivered to the Trustee for deposit in the Accounts established under the Indentures" ("Interpleader Legal Fees") and (c) "whether the Issuers and Collateral Manager are entitled to payment (or reimbursement for payment) for the Interpleader Judgment Fees from amounts maintained by or delivered to the Trustee for deposit in the Accounts established under the Indentures"  (the "Interpleader Judgment Fees").  The Court dismissed without prejudice the interpleader claim with respect to the Interpleader Judgment Fees as not ripe.

In their affirmative claims to the _res_, the Noteholders have sought (i) the funds retained with respect to the Phoenix Invoices, which the Trustee must distribute "to the CDOs" and (ii) the Interpleader Legal Fees, which the Trustee must also distribute through the Waterfall.

**_TAM_**:

　　　　a.　　**Claims**

TAM asserts a claim for a declaratory judgment against U.S. Bank that (i) TAM, pursuant to the Collateral Management Agreements ("CMAs") and Indentures and as the Issuers' agent was authorized to engage third party professionals on behalf of the Issuers; (ii) TAM, on behalf of the Issuers was authorized to hire third-party professionals and permit those professionals' fees to be paid as Administrative Expenses of the Triaxx CDOs; (iii) TAM, pursuant to the Indentures, is entitled to its bargained-for right to indemnification for its legal fees and expenses, including indemnification for any judgment against it, incurred in defending this action; (iv) Phoenix, pursuant to the Engagement Agreements, is entitled to be indemnified by the Issuers for its legal fees and expenses, including indemnification for any judgment against it, incurred in defending this action; (v) Phoenix is entitled to be paid its fees and expenses as Administrative Expenses from the Priority of Payments under the Indentures; and (vi) Phoenix is entitled to the payment of the "Activist Implementation Fee" of $250,000 per security, in addition to the $10,000 per month per security, on the securities in which it is engaged for activist implementation where recoveries to Triaxx exceed a minimum of $500,000 for each security.  (*See* First Counterclaim, Dkt. No. 211 ¶¶ 207-211.)

TAM also asserts a crossclaim against the Issuers for breach of contract.  TAM alleges that the Issuers breached their obligations under the CMAs by failing to indemnify TAM for its reasonable

---

[5] By virtue of its intervention, Citi, like PIMCO, is an interpleader defendant regarding the Phoenix Invoices and Interpleader Legal Fees.  PIMCO and Citi bring the same affirmative claims.

legal fees and expenses incurred in connection with this action.  (*See* First Crossclaim, Dkt. No. 211 ¶¶ 212-217.)

> **b.**    **Defenses**

In response to U.S. Bank's interpleader claim, declaratory judgment claim, and breach of contract claim against TAM (*see* First, Second and Third Claim, Dkt. No. 203 ¶¶ 92-106), TAM asserts the following defenses to be tried: (1) any objections to the engagement and monthly payments of Phoenix and payments to it are barred by waiver, laches, estoppel, ratification, and/or other equitable defenses (*see* Second Affirmative Defense, Dkt. No. 211 ¶ 135); (2) U.S. Bank and/or the Noteholders ratified the engagement and monthly payments of Phoenix (*see* Third Affirmative Defense, Dkt. No. 211 ¶ 136); (3) TAM is without liability because it acted in good faith on the legal opinions and advice of counsel (*see* Fourth Affirmative Defense, Dkt. No. 211 ¶ 137); (4) U.S. Bank and the Noteholders have not suffered damages as a result of any conduct by TAM (*see* Fifth Affirmative Defense, Dkt. No. 211 ¶ 138); (5) U.S. Bank and the Issuers have ratified the payments made to Phoenix outside of the Waterfall (*see* Sixth Affirmative Defense, Dkt. No. 211 ¶ 139).

In response to PIMCO's affirmative claim to the *res*, TAM asserts the following defenses to be tried:  (1) PIMCO has not suffered injury or damages as a result of any conduct by TAM (*see* Third Affirmative Defense, Dkt. No. 217); (2) PIMCO's objections are barred by estoppel, laches, ratification and/or waiver (*see* Fourth Affirmative Defense, Dkt. No. 217); (3) PIMCO does not have a basis to object to payments to Phoenix because Phoenix's engagement and the payments to Phoenix were ratified by the Issuers and/or the Collateral Manager had authority to enter into the engagement on behalf of the Issuers (*see* Sixth Affirmative Defense, Dkt. No. 217); (4) PIMCO does not have a basis to object to the Issuers' payments to Phoenix because the Issuers are bound by the agreements with Phoenix (*see* Eighth Affirmative Defense, Dkt. No. 217).

### *Phoenix*:

> **a.**    **Claims**

Phoenix asserts the following crossclaims against the Issuers: (1) breach of contract for failing to pay fees pursuant to the Engagement Agreements (see First Crossclaim, Dkt. No. 209 ¶¶ 180-185); (2) in the alternative, unjust enrichment for failure to pay Phoenix pursuant to the Engagement Agreements (*see* Second Crossclaim, Dkt. No. 209 ¶¶ 186-191); (3) also in the alternative, promissory estoppel for promising to pay Phoenix for its work but failing to do so (*see* Third Crossclaim, Dkt. No. 209 ¶¶ 192-197); (4) in the alternative, quantum meruit for accepting Phoenix's valuable services without payment (*see* Fourth Crossclaim, Dkt. No. 209 ¶¶ 198-203); and (5) indemnification for failure to reimburse Phoenix for fees and expenses of counsel incurred in defending this action (*see* Fifth Crossclaim, Dkt. No. 209 ¶¶ 204-209).

> **b.**    **Defenses**

In response to U.S. Bank's interpleader claim, unjust enrichment claim, and money had and received claim against Phoenix, Phoenix asserts the following defenses to be tried: (1) U.S. Bank and the Noteholders have not suffered, and will not suffer, injury or damages as a result of any

conduct by Phoenix (*see* Second Affirmative Defense, Dkt. No. 209 ¶ 135); (2) U.S. Bank does not have a basis to withhold payments to Phoenix because any objections are barred by estoppel, laches, ratification and/or waiver (*see* Third Affirmative Defense, Dkt. No. 209 ¶ 136); (3) U.S. Bank does not have a basis to withhold payments to Phoenix because the Issuers are bound by the agreements with Phoenix (*see* Fifth Affirmative Defense, Dkt. No. 209 ¶ 138); and (4) U.S. Bank has ratified payments to Phoenix made outside of the waterfall (*see* Sixth Affirmative Defense, Dkt. No. 209 ¶ 139).

In response to PIMCO's affirmative claim to the *res*, Phoenix asserts the following defenses to be tried:  (1) PIMCO has not suffered any injury or damages as a result of any conduct by Phoenix (*see* Third Affirmative Defense, Dkt. No. 215); (2) PIMCO's objections to payments to Phoenix are barred by estoppel, laches, ratification, and/or waiver (see Third Affirmative Defense, Dkt. No. 215); (3) PIMCO does not have a basis to object to the Issuers' payments to Phoenix because Phoenix's engagement was ratified by the Issuers and/or the Collateral Manager had authority to enter into the engagement on behalf of the Issuers (*see* Sixth Affirmative Defense, Dkt. No. 215); and (4) PIMCO does not have a basis to object to the Issuers' payments to Phoenix because the Issuers are bound by the agreements with Phoenix (*see* Eighth Affirmative Defense, Dkt. No. 215).

***Issuers:*** The Issuers were named in this interpleader action merely as necessary parties, without a personal economic stake in its outcome. The interpleader has grown, however, into a broader litigation that has spawned direct claims implicating the Issuers, to which the Issuers respond as follows. As a general matter, pursuant to the CMAs, the Issuers appointed the Collateral Manager as their agent, with a broad power of attorney, to undertake several day-to-day responsibilities for the Issuers, including (i) exercising rights or remedies with respect to the Issuers' collateral assets (*e.g.*, RMBS) and (ii) taking other actions consistent with the Indentures that the Collateral Manager believes to be in the best interest of the Noteholders. Accordingly, all day-to-day functions of the Issuers that are alleged to bear upon the issues in this action were the delegated responsibilities of the Collateral Manager. In addition:

### a.  Trustee's Declaratory Judgment Claim

The Issuers do not take a position on the remaining declaratory relief sought by the Trustee and will abide by the Court's ruling on those issues.

### b.  Third Interpleader Claim (payment of the Issuers' legal fees/expenses incurred in responding to this action)

The Noteholders' contention that the Issuers' attorneys' fees and other legal expenses incurred in this action must be funded by the Collateral Manager under the CMA, rather than paid through the Priority of Payments waterfalls under the Indentures, is incorrect. The Indentures mandate that the Issuers' legal fees and expenses, which are undisputedly Other Administrative Expenses, "shall" be paid through the waterfalls (subject to the monthly cap). Not only does the indemnity provision in the CMAs cited by the Noteholders not apply, but if it did, the CMA would conflict with the mandatory payment directive in the Indenture, and under the conflict resolution clause in the CMA, the terms of the Indenture "shall control."  To the extent the indemnity provision in the CMAs cited by the Noteholders applies, the Issuers' claim for indemnity from the Collateral Manager for

recovery of Issuer legal expenses paid out of CDO proceeds as Administrative Expenses would be held by the Trustee.

### c. Phoenix's and TAM's Crossclaims Against the Issuers (for payment of Phoenix's fees and TAM's legal fees)

As the Court already ruled, the Issuers are non-recourse entities and any claim against them seeking a recovery other than against the Issuers' collateral is barred under the Indentures. Analogous provisions in the CMA and Phoenix Engagement Letters state the same. Phoenix's and TAM's sole recourse for professional and legal fees is from the distribution of available Collateral Proceeds through the Priority of Payments waterfalls.

## v.    DAMAGES

**_Trustee_**: The Trustee seeks the following damages:

### a.   Breach of Contract (against TAM)

#### 1)   *Compensatory Damages*

The Trustee, on behalf of the CDO Trusts, seeks compensatory damages for TAM's breaches. Here, TAM improperly disbursed at least **$38,843,121.26** outside the Priority of Payments waterfall, and this sum constitutes the amount of compensatory damages due to the Trustee for deposit in the Triaxx CDOs' accounts. *See* Appendix A ¶ 64.

#### 2)   *Prejudgment Interest*

The Trustee is entitled to prejudgment interest at the statutory rate of 9% per annum from the date the cause of action existed until the date that the final judgment is entered. *See* CPLR § 5001(b). The "date the cause of action existed" is the date the loss or damage was actually incurred.[6]  Here, the damages for each payment were incurred the date TAM made the payment outside of the Priority of Payments waterfall. A detailed listing of the date each improper payment was made is found in Appendix A ¶ 64. Assuming the date the final judgment is entered is the last date of the trial, the total amount of prejudgment interest is **$25,161,831.76**, for total damages of **$64,004,953.02**.

### b.   Unjust Enrichment and Money Had/Received (against Phoenix)

#### 1)   *Compensatory Damages*

The measure of damages for an unjust enrichment claim is restricted to the "reasonable value" of the benefit conferred upon a defendant. Similarly, the measure of damages of a money

---

[6] *See Mel-Stu Constr. Corp. v. Melwood Constr. Corp.*, 517 N.Y.S.2d 87, 89 (2d Dep't 1987) (in action for breach of fiduciary duty to corporation by conversion of corporate funds, finding interest should have been determined from date on which actual conversion took place - i.e., the date that funds were credited to a fiduciary's account).

had/received claim is the amount "necessary to make the plaintiff whole." Here, the reasonable value of the benefit conferred upon Phoenix or the amount necessary to make the Trustee (on behalf of the CDO Trusts) whole is equal to the actual pecuniary loss sustained by the CDO Trusts: **$22,799,194.75**.

2)   ***Prejudgment Interest***

Under the CPLR, prejudgment interest is not mandatory for an equitable claim, but the Court may, in its discretion, award prejudgment interest. *See* CPLR §5001(a). Assuming the date that final judgment is entered is the last date of the trial, the total amount of prejudgment interest is **$15,257,659.79**, for total damages of **$38,056,854.54**.

**_Noteholders:_** As the Trustee has alleged, if any portion of Phoenix's Invoices are not paid as "Other Administrative Expenses," the proceeds allegedly allocable to Phoenix would be available to pay additional amounts owing under the Priority of Payments waterfall and would increase the amount of proceeds available to pay PIMCO and Citi.

**_TAM_:** TAM does not seek damages in connection with its counterclaim for a declaratory judgment against the Trustee. (*See* First Counterclaim, Dkt. No. 211 ¶¶ 207-211.) With respect to TAM's crossclaim against the Issuers for breach of contract, TAM seeks indemnification for its reasonable legal fees and expenses in this action. (*See* First Crossclaim, Dkt. No. 211 ¶¶ 212-217.) As of January 31, 2023, such fees and expenses total $3,309,442.53.

**_Phoenix:_** In connection with each of its breach of contract and quasi-contract crossclaims against the Issuers (*see* First, Second, Third, and Fourth Crossclaims, Dkt. No. 203 ¶¶ 180-203), Phoenix seeks the following damages which are fees owed to it for work performed for each CDO:

| Triaxx CDO | Unpaid Fees |
|---|---|
| 2006-1 | $9,503,346.00 |
| 2006-2 | $8,368,831.61 |
| 2007-1 | $5,598,210.00 |
| **Total** | **$23,470,387.61** |

With respect to its claim for indemnification, Phoenix seeks indemnification for its reasonable legal fees and expenses in this action. (*See* Fifth Crossclaim, Dkt. No. 209 ¶¶ 204-209.) As of January 31, 2023, these fees and expenses total $2,007,854.35.

## vi.   NUMBER OF TRIAL DAYS AND JURY/BENCH TRIAL

The Parties request that the case be tried without a jury and anticipate that a bench trial will take approximately four to five days.

## vii.   STIPULATIONS

See **Appendix A** for stipulations of fact and law to which all Parties consent.

## viii.   WITNESSES

Per the Court's September 19, 2022 Order (Dkt. 449), affidavits or declarations shall constitute the direct testimony of each trial witness to be called by that party, except for an adverse party, a person whose attendance must be compelled by subpoena, or a person from whom the Court has agreed to hear direct testimony live at the trial. The original signed affidavits or declarations shall be brought to trial to be marked as exhibits.

### a.   Party-Controlled Witnesses To Be Called to Testify at Trial

***Trustee:***

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Kenneth Sliwa | U.S. Bank | - Obligations of the Trustee and Collateral Administrator<br>- Priority of Payments waterfall and Indentures<br>- Note Valuation Reports<br>- Trustee's Roles vis-à-vis the Issuers and the Collateral Manager<br>- Trustee lack of knowledge of Collateral Recoveries and the distribution thereof | Affidavit (direct)<br>Live (re-direct) |
| Vishal Garg | TAM and Phoenix | - Corporate structures and relatedness of TAM, Phoenix, and other 1/0 Capital companies<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Clarification Letters<br>- Distribution of Collateral Recoveries<br>- SRZ Memorandum | Live |

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Nicholas Calamari | TAM and Phoenix | - Corporate structures and relatedness of TAM, Phoenix, and other 1/0 Capital Companies<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Clarification Letters<br>- Distribution of Collateral Recoveries<br>- SRZ Memorandum | Live |
| Sigurgeir Jonsson | Phoenix | - RMBS Litigations<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Employment Agreements and salary | Live |
| Dominick Savino | Phoenix | - Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Employment Agreements and salary | Deposition Designation |
| TAM 30(b)(6) (Designee: Matthew Maron) | TAM | - Corporate structures and relatedness of TAM, Phoenix, and other 1/0 Capital companies<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Clarification Letters<br>- Distribution of Collateral Recoveries<br>- SRZ Memorandum | Deposition Designation |
| Phoenix 30(b)(6) (Designee: Matthew Maron) | Phoenix | - Corporate structures and relatedness of TAM, Phoenix, and other 1/0 Capital companies<br>- RMBS Litigations<br>- Phoenix's Activist Implementation Services<br>- Invoicing and Payment of Phoenix's Fees<br>- Clarification Letters<br>- Collateral Recoveries | Deposition Designation |

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Issuers 30(b)(6) (Designee: Evert Brunekreef) | Issuers | - Obligations of the Issuers<br>- Priority of Payments waterfall and Indentures<br>- RMBS Litigations<br>- Phoenix, including knowledge of Phoenix's Activist Implementation Servicers<br>- Trustee's Roles vis-à-vis the Issuers and the Collateral Manager<br>- Issuers' knowledge of Collateral Recoveries and the distribution thereof<br>- SRZ Memorandum | Deposition Designation |

**_PIMCO:_**[7]

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Kenneth Sliwa | U.S. Bank | - Obligations of the Trustee<br>- Trustee's Roles vis a vis the Issuers and the Collateral Manager<br>-The collateral in the Triaxx CDO transactions and the Note Valuation Reports | Live |

---

[7] Except for Ilias Islamov and Giang Bui (included in this chart, below), Citi will rely at trial, as to Triaxx 2006-2, on PIMCO's calling and examination of witnesses as to Triaxx 2007-1.

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---------|-------------------|----------|---------------------|
| Vishal Garg | TAM and Phoenix | - Corporate structures and/or relatedness of TAM, Phoenix, other 1/0 companies, and associated individuals<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Distribution of the Collateral Recoveries<br>--The Engagement Letters and other agreements concerning the TAM Parties and affiliated entities and persons entered into on March 22, 2011, the Legal and Analytical Consulting Services Agreement dated July 1, 2013, as well as any other relevant agreements entered into by the TAM Parties or affiliated entities and persons | Live |
| Nicholas Calamari | TAM and Phoenix | - Corporate structures and/or relatedness of TAM, Phoenix, other 1/0 companies, and associated individuals<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Distribution of the Collateral Recoveries<br>-The Engagement Letters and other agreements concerning the TAM Parties and affiliated entities and persons entered into on March 22, 2011, the Legal and Analytical Consulting Services Agreement dated July 1, 2013, as well as any other relevant agreements entered into by the TAM Parties or affiliated entities and persons | Live |
| Dominick Savino | Phoenix | - Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Employment agreements and salary | Deposition Designation |

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Giang Bui | PIMCO | -PIMCO's economic interest<br>- The Engagement Agreements and other agreements concerning TAM and Phoenix<br>-Lack of notice of the March 22, 2011 Engagement Letters and Phoenix's work | Deposition Designation |
| PIMCO 30(b)(6) | PIMCO | -PIMCO's economic interest<br>The Engagement Agreements and other agreements concerning TAM and Phoenix<br>-Lack of notice of the March 22, 2011 Engagement Letters and Phoenix's work | Deposition Designation |
| TAM 30(b)(6) (Designees: Matthew Maron, Nicholas Calamari) | TAM | - Corporate structures and/or relatedness of TAM, Phoenix, other 1/0 companies, and associated individuals<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Distribution of the Collateral Recoveries<br>- The Engagement Letters and other agreements concerning the TAM Parties and affiliated entities and persons entered into on March 22, 2011, the Legal and Analytical Consulting Services Agreement dated July 1, 2013, as well as any other relevant agreements entered into by the TAM Parties or affiliated entities and persons | Deposition Designation |

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Phoenix 30(b)(6) (Designees: Matthew Maron, Nicholas Calamari, Vishal Garg) | Phoenix | - Corporate structures and/or relatedness of TAM, Phoenix, other 1/0 companies, and associated individuals<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Distribution of the Collateral Recoveries<br>-The Engagement Letters and other agreements concerning the TAM Parties and affiliated entities and persons entered into on March 22, 2011, the Legal and Analytical Consulting Services Agreement dated July 1, 2013, as well as any other relevant agreements entered into by the TAM Parties or affiliated entities and persons | Deposition Designation |

*Citi*:

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Ilias Islamov | Citi | - Citi's economic interest<br>- The Engagement Agreements and other agreements concerning TAM and Phoenix<br>-Lack of notice of the March 22, 2011 Engagement Letters and Phoenix's work | Deposition Designation |

***TAM Parties:***

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Nicholas Calamari | TAM and Phoenix | - The Clarification Letters<br>- SRZ's legal advice to TAM regarding payment of Phoenix<br>- The benefits and value of Phoenix's services<br>- Phoenix's invoices<br>- The CDOs' non-payment of Phoenix's fees and the legal fees of Phoenix and TAM<br>- The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix<br>- The CMAs and TAM's indemnification rights<br>- Phoenix's indemnification rights<br>- Phoenix's and TAM's legal fee invoices in this action | Affidavit |
| Vishal Garg | TAM and Phoenix | - Phoenix's history, founding and structure<br>- Phoenix's engagement by the CDOs<br>- Phoenix's services to the CDOs<br>- The CDOs' activist strategy<br>- The CDOs' acceptance of Phoenix's services<br>- Phoenix's expectation of payment for its services<br>- The benefits and value of Phoenix's services<br>- The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix | Affidavit |
| Mingsung Tang | Phoenix | - Phoenix's services to the CDOs<br>- The CDOs' acceptance of Phoenix's services<br>- Phoenix's invoices<br>- The CDOs' payments to Phoenix | Affidavit |
| Sigurgeir Jonsson | Phoenix | - Phoenix's services to the CDOs | Affidavit |

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Kenneth Sliwa | U.S. Bank | - The CDOs' acceptance of Phoenix's services<br>- The benefits and value of Phoenix's services<br>- The CDOs' non-payment of Phoenix's fees and the legal fees of Phoenix and TAM<br>- The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix<br>- The CDOs' payments to Phoenix | Live |
| Thomas Collins | U.S. Bank | - The CDOs' acceptance of Phoenix's services<br>- The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix<br>- The CDOs' payments to Phoenix | Deposition |
| Giang Bui | PIMCO | - The CDOs' acceptance of Phoenix's services<br>- The benefits and value of Phoenix's services<br>- The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix<br>- PIMCO's lack of damages | Deposition |
| PIMCO | PIMCO | - The CDOs' acceptance of Phoenix's services<br>- The benefits and value of Phoenix's services<br>- The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix<br>- PIMCO's lack of damages | Deposition |

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Issuers | Issuers | - Phoenix's engagement by the CDOs<br>- The CDOs' acceptance of Phoenix's services<br>- The benefits and value of Phoenix's services<br>- The CDOs' non-payment of Phoenix's fees and the legal fees of Phoenix and TAM<br>- SRZ's legal advice to TAM regarding payment of Phoenix<br>- The CDOs' payments to Phoenix | Deposition |
| Ilias Islamov | Citi | - The Trustee's and the Noteholders' knowledge of Phoenix's engagement and the CDOs' payments to Phoenix<br>- CGMI's lack of damages | Deposition |

**b. Non-Party Witnesses To Be Called to Testify at Trial**

***Trustee*:**

| Witness | Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Thomas Priore | Priority Technology Holdings | - Obligations of the Collateral Manager<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Sale of ICP<br>- Continuing Involvement in TAM and Phoenix Post Sale of ICP | Live |
| John Moon | Olshan Frome Wolosky LLP | - Legal Engagement by Triaxx CDOs and Collateral Manager<br>- RMBS Litigations<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Clarification Letters<br>- Indentures<br>- Distribution of the Collateral Recoveries | Live |

| Witness | Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Craig Stein | Schulte Roth & Zabel LLP | - Legal Engagement by Triaxx CDOs and Collateral Manager<br>- Indentures<br>- Distribution of Collateral Recoveries<br>- SRZ Memorandum | Live |
| David Nissenbaum | Schulte Roth & Zabel LLP | - Legal Engagement by Triaxx CDOs and Collateral Manager<br>- Indentures<br>- Distribution of Collateral Recoveries<br>- SRZ Memorandum | Live |
| Schulte Roth & Zabel LLP 30(b)(6) (Designee: Craig Stein) | Schulte Roth & Zabel LLP | - Legal Engagement by Triaxx CDOs and Collateral Manager<br>- Indentures<br>- Distribution of Collateral Recoveries<br>- SRZ Memorandum | Deposition Designation |

***PIMCO*:**

| Witness | Party Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| Thomas Priore | Priority Technology Holdings | - Obligations of the Collateral Manager<br>- Collateral Manager's Activist Implementation Strategy<br>- Phoenix's Activist Implementation Services<br>- Payment of Phoenix's Fees<br>- Sale of ICP<br>- Continuing Involvement Post Sale of ICP<br>-The Engagement Letters and other agreements concerning the TAM Parties and affiliated entities and persons entered into on March 22, 2011, the Legal and Analytical Consulting Services Agreement dated July 1, 2013, as well as any other relevant agreements entered into by the TAM Parties or affiliated entities and persons | In-person |

***TAM Parties:***

| Witness | Affiliation | Topic(s) | Method of Testimony |
|---|---|---|---|
| John Moon | Olshan Frome Wolosky LLP | - Phoenix's services to the CDOs<br>- The CDOs' activist strategy<br>- The CDOs' acceptance of Phoenix's services<br>- Phoenix's expectation of payment for its services<br>- The benefits and value of Phoenix's services<br>- Phoenix's invoices<br>- SRZ's legal advice to TAM regarding payment of Phoenix<br>- The CDOs' payments to Phoenix | Declaration |
| Thomas Priore | Priority Technology Holdings | - Phoenix's engagement by the CDO<br>- Phoenix's services to the CDOs<br>- The CDOs' activist strategy<br>- The CDOs' acceptance of Phoenix's services<br>- Phoenix's expectation of payment for its services<br>- The benefits and value of Phoenix's services | Live[8] |
| Anne Beaumont | Friedman Kaplan Seiler Adelman & Robbins LLP | - Phoenix's and TAM's legal fee invoices in this action | Declaration |

Any party may cross-examine a witness who appears live and whose testimony is offered by another party.

---

[8] The TAM Parties are submitting deposition designations for Mr. Priore in the event that Mr. Priore is unavailable for trial.  If the TAM Parties are able to secure Mr. Priore's appearance at trial, they will withdraw the designations. The Trustee and the Noteholders object to the designation of Mr. Priore's deposition testimony at this time because there is currently no indication that Mr. Priore will be unavailable for trial or that he cannot be subpoenaed under Rule 45, and therefore no basis to designate testimony pursuant to Rule 32.  If Mr. Priore cannot be compelled to testify pursuant to a Rule 45 subpoena, the Trustee and Noteholders reserve the right to designate and counter-designate deposition testimony.

**ix.     DEPOSITION TESTIMONY**

See **Appendix B** for a list of deposition designations, counter-designations, and objections. Each party reserves the right to designate deposition testimony in its case in chief in the event one or more of the witnesses listed above are not available for live testimony at trial.

The TAM Parties' deposition designations will be submitted separately from the Joint Pretrial Order, as the designations include text of deposition testimony that has been designated as confidential pursuant to the Protective Order.[9]

**x.      EXHIBITS**

See **Appendix C** for an index of proposed trial exhibits and party objections. Each party reserves the right to use any exhibit appearing on another party's exhibit list.

Dated:        New York, New York
              February 22, 2023

---

[9] Unlike the other parties which used a standardized chart format, the TAM Parties have submitted deposition designations by purporting to copy portions of the deposition transcripts directly into a Word Document. PIMCO, Citi, and the Trustee object, to the extent that these copied portions differ from the authentic transcripts for any reason, including typographical error, and reserve all rights.

**ALSTON & BIRD LLP**

By: /s/ Alexander S. Lorenzo

Alexander S. Lorenzo
(alexander.lorenzo@alston.com)
Elizabeth A. Buckel
(elizabeth.buckel@alston.com)
Samantha Bui
(samantha.bui@alston.com)
90 Park Avenue
New York, NY 10016
(212) 210-9400

Karla Doe (karla.doe@alston.com)
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
 (404) 881-7000

*Attorneys for U.S. Bank National*
*Association, solely in its capacity*
*as Trustee*

**FRIEDMAN KAPLAN SEILER**
  **ADELMAN & ROBBINS LLP**

By: /s/ Anne Beaumont

Anne E. Beaumont (abeaumont@fklaw.com)
Priyanka Wityk (pwityk@fklaw.com)
Anil K. Vassanji (avassanji@fklaw.com)
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Triaxx Asset Management LLC and*
*Phoenix Real Estate Solutions Ltd.*

**NORTON ROSE FULBRIGHT US LLP**

By: /s/ Sandeep Savla

Sandeep Savla
(sandeep.savla@nortonrosefulbright.com)
Anthony Lauriello
(anthony.lauriello@nortonrosefulbright.com)
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 318-3253

*Attorneys for Pacific Investment*
*Management Company LLC*

**DAVIS POLK & WARDWELL LLP**

By: /s/ Elliot Moskowitz

Elliot Moskowitz
(elliot.moskowitz@davispolk.com)
Adam Greene (adam.greene@davispolk.com)
450 Lexington Ave
New York, NY 10017
(212) 450-4000

*Attorneys for Citigroup Global Markets, Inc*

**WOLLMUTH MAHER & DEUTSCH LLP**

By: /s/ Randall Rainer

Randall R. Rainer (rrainer@wmd-law.com)
Michael C. Ledley (mledley@wmd-law.com)

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

*Attorneys for Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2, Ltd. and Triaxx Prime CDO 2007-1, Ltd.*